**Anthony Symortis ARNWINE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00097–CR.**

Court of Appeals of Texas, Texarkana.

Submitted April 10, 2000.

Decided April 11, 2000.

Peter Adams, Houston, for appellant.

Calvin A. Hartmann, Harris County District Attys. Office, Barbara Anne Drumhel-

ler, Asst. Dist. Atty., Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Anthony Symortis Arnwine was charged with committing an aggravated assault on his mother, Francine Arnwine, by using a deadly weapon, a crutch. A jury convicted him and assessed his punishment at imprisonment for a period of twenty years. Arnwine appeals, contending in a single point of error that the trial court erred in failing to submit to the jury an instruction on the defense of necessity.

On the evening in question, at approximately 10:00 p.m., Arnwine, age 41, arrived at his parents' home, where he also resided, and was in the living room when he and his father, Symortis Arnwine,[1] got into an argument. During the argument, the father left the living room and went to a bedroom. After this point, Arnwine's mother's account and his own account of what happened are somewhat conflicting.

Francine Arnwine, age 66, testified that after her husband left the room, she also left and went into the kitchen. She further testified that her son followed her into the kitchen, got a plate of food, and returned with his plate to the living room. She said that her son was cursing and that when she told him to quit, he replied, "No woman tells me what to do." She said that Arnwine then picked up a crutch and struck her in the head, causing her to lose consciousness and fall to the floor. She testified that after she regained consciousness but was still on the floor, she heard three shots fired. She said she also heard her husband tell her son, "Don't come back."

Arnwine testified that when his father left the living room, he yelled to him, "I know you [sic] going out there for that little old pistol but if you do ... be prepared to use it.... There's a crutch sitting right there at your door. I'm going to try to put it on you." He further testified that he then went into the kitchen and told his mother that his father had gone to get a gun and that, "I'm not going to sit here and let him shoot me." He testified that while in the kitchen with his mother, he saw his father come out of his room with a gun in his hand and then immediately return to his room. He said that his mother was "all over" him and that she had her hands "sort of" on his chest, trying to calm him. He testified that this is when he "lost it," and that when his mother refused to listen he hit her "with a left uppercut." He denied that he hit her with a crutch. He further testified that after he hit his mother, his next move was to go toward his father, who was in his room out of sight. He testified that he then saw his father "standing there and then he ducks back on into the bedroom again." Arnwine said that he went to the doorway of the room where his father was and that his father started firing shots at him and he (Arnwine) left the premises.

To properly preserve any alleged error in the jury charge, the defendant must present a timely objection to the charge, distinctly specifying each ground of objection. When requesting a special instruction on a defensive issue, the Code of Criminal Procedure requires that the defendant present the requested instruction to the trial court in writing or by dictating the proposed charge to the court reporter in the presence of the judge and the State, prior to reading the charge to the jury. However, a defendant preserves error for appellate review if the request is sufficiently specific to put the trial court on notice of an omission or error in the charge. TEX.CODE CRIM. PROC. ANN. art. 36.15 (Vernon Supp.2000); *Brazelton v. State*, 947 S.W.2d 644, 647 (Tex.App.-Fort Worth 1997, no pet.).

---

1. Symortis Arnwine was deceased at the time of trial.

Although defense counsel in this case neither presented his proposed charge in writing nor dictated it into the record, the trial judge understood Arnwine's objection to the lack of a charge on necessity and was aware of his request to include that charge. After the charge was prepared and submitted to counsel, but before it was read to the jury, the following dialogue between the trial court and defense counsel occurred:

> [Defense counsel]: Judge, at this time we object to the charge on the ground that it fails to instruct the jury on the defense of necessity. Nowhere in the charge do I find that law on necessity charge, nor is there an application of the law of necessity in the facts of the case.
>
> THE COURT: I'm assuming you're requesting the charge of necessity?
>
> [Defense counsel]: I am, judge.
>
> THE COURT: And just so the record's clear, you did not submit a written proposed charge; is that right?
>
> [Defense counsel]: No, I have not, judge.
>
> THE COURT: ... Your request for the defense of necessity is denied.

We find that Arnwine has properly preserved this issue for appeal.

■ In order for a defendant to properly raise the defense of necessity, he or she must admit to committing the offense charged. *Maldonado v. State*, 902 S.W.2d 708, 712 (Tex.App.-El Paso 1995, no pet.); *Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.-Houston [14th Dist.] 1987, no pet.). In *Allen v. State*, 971 S.W.2d 715 (Tex. App.-Houston [14th Dist.] 1998, no pet.), the defendant was convicted of the offense of failure to stop and render aid. On appeal, the defendant raised, *inter alia*, a point of error regarding the alleged failure of the trial court to give a requested jury charge on necessity. The defendant testified in the case, admitting that she had left the scene without rendering aid, but denied that she hit anyone. Since she did not admit committing the offense, she

could not maintain that she committed it out of necessity. *Id.* at 720.

■ In the present case, Arnwine admitted striking his mother, but stated that he did so with a "left uppercut" and specifically denied using a crutch to strike her. In the court's charge, the jury was given the following choices: 1) to find Arnwine guilty of aggravated assault by using a deadly weapon, a crutch, as charged in the indictment; 2) to find Arnwine guilty of assault (but not by using a crutch); or 3) to find Arnwine not guilty. Assault is, in this case, a lesser included offense of aggravated assault. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981); *State v. Rios*, 861 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). Because Arnwine admitted to an offense for which the jury could have convicted him, and because justification by necessity is a defense to either assault or aggravated assault, we find that under the facts of this particular case, Arnwine's admission to the lesser offense was sufficient to meet the threshold requirement for such a defense.

■ It is well settled that if a defendant raises any evidence of a recognized defensive theory, and such evidence is admitted at trial, the trial court must instruct the jury on that defensive theory. *Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App. 1997); *Muniz v. State*, 851 S.W.2d 238, 254 (Tex.Crim.App.1993). It does not matter whether such evidence is strong or weak, contradicted or uncontradicted, or what the trial court may think about its credibility. *Brown*, 955 S.W.2d at 279; *Miller v. State*, 815 S.W.2d 582, 585 (Tex.Crim.App. 1991). As recently stated in an opinion of this Court in a case where the defendant was charged with aggravated assault with a deadly weapon in a penal institution:

> Therefore, he [the defendant] could have been entitled to an affirmative instruction on necessity ... if raised by the evidence, whether that evidence was strong, feeble, unimpeached, or contradicted, and even if the trial court be-

lieved that the testimony was unbelievable.

*Gonzales v. State,* 2 S.W.3d 600, 604 (Tex. App.-Texarkana 1999, pet. ref'd [two pets.]). The rule is designed to insure that the jury, and not the trial judge, decides the relative credibility of such evidence. *Miller,* 815 S.W.2d at 585. Where the evidence, however, fails to raise a defensive issue, the trial court commits no error in refusing such a requested instruction. *Muniz,* 851 S.W.2d at 254. .

TEX. PEN.CODE ANN. § 9.02 (Vernon 1994) states that "[i]t is a defense to prosecution that the conduct in question is justified under this chapter." TEX. PEN.CODE ANN. § 9.22 (Vernon 1994) defines the defense of justification by necessity, as follows:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

 The rationale of the defense is not that the defendant, faced with the unnerving threat of harm unless he does an act which violates the literal language of the criminal law, somehow loses his mental capacity to commit the crime in question. Nor is it that the defendant has not engaged in a voluntary act. Rather, it is that even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is justified because he has thereby avoided a harm of greater magnitude. *Alford v. State,* 866 S.W.2d 619, 624 n. 9 (Tex.Crim.App.1993). And he must establish that he reasonably believed that his

conduct was immediately necessary to avoid imminent harm. TEX. PEN.CODE ANN. § 9.22(1); *Maldonado,* 902 S.W.2d at 712. A "reasonable belief" is one that would be held by an ordinary and prudent person in the same circumstances as the actor. TEX. PEN.CODE ANN. § 1.07(42) (Vernon 1994); *Brazelton,* 947 S.W.2d at 648. The defense of justification based on necessity is assessed from the standpoint of the accused. *Gonzales,* 2 S.W.3d at 605; *Leach,* 726 S.W.2d at 600.

 Unlike challenges to the legal sufficiency of evidence, the appellate court reviews evidence offered in support of defensive issues in the light most favorable to the defense. *Brazelton,* 947 S.W.2d at 646. However, a defendant's belief that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as a matter of law if undisputed facts demonstrate a complete absence of immediate necessity or imminent harm. *Brazelton,* 947 S.W.2d at 648–49.

 Arnwine testified on redirect examination as follows:

Q. And when you struck your mother, did you feel like that conduct was immediately necessary to avoid your father shooting you?

A. Yes.

. . . .

Q. Did you think your father was going to shoot you?

A. Yes, I did.

Q. And did you feel like that was immediate—an immediate danger?

A. Yes, I did.

Q. And what you did with your mother was to avoid that harm?

A. Yes.

. . . .

Q. . . . When you hit your mother, did you intend to injure her?

A. I intended to get her out of the way so I could take care of the business at hand that was going on with he and I.

Even accepting as true Arnwine's testimony concerning his expressed fear of his father coming after him with a gun, we fail to perceive why striking his mother was an act done, according to ordinary standards of reasonableness, to avoid imminent harm. His testimony that it was done to avoid an immediate danger was stated only in conclusory terms in answer to leading and suggestive questions. The facts, even considered in a light most favorable to him, contradict his conclusory testimony. Those facts do not show Arnwine's father standing in the kitchen with a gun pointed at him and his mother holding or obstructing him in such a way as to prevent his escape. Further, Arnwine acknowledged on cross-examination that the house where the incident in question occurred contained two exits by which he could have departed if his father came after him. It has been held that the existence of lawful alternatives to the commission of a criminal act may preclude a defendant from the defense of justification by necessity. *See Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.-Houston [14th Dist.] 1994, pet. ref'd).[2]

The absence of any factual basis to support Arnwine's conclusory testimony that his conduct in striking his mother was immediately necessary to avoid imminent harm made an instruction to the jury on the defense of necessity inappropriate. In *Sheridan v. State*, the Fort Worth court stated that Sheridan did not receive an instruction on the defense of necessity because he never presented *facts* raising that defense. *Sheridan v. State*, 950 S.W.2d 755, 758 (Tex.App.-Fort Worth 1997, no

pet.). Neither did Arnwine in the present case. For this reason, the trial court did not err in refusing his requested instruction.

The judgment is affirmed.

---

**2.** *Compare United States v. Harris,* where the court stated the following in regard to the similar defense of "duress":

To justify an instruction on duress, a defendant must show 1) he was under an unlawful, present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; 2) he had not recklessly or negligently placed himself in such a situation; 3) *he had no reasonable legal alternative to violating the law;* and 4) there is a

direct causal relationship between the criminal action taken and the avoidance of threatened harm.

*United States v. Harris,* 104 F.3d 1465, 1473 (5th Cir.1997) (emphasis added); *see also United States v. Posada–Rios,* 158 F.3d 832, 873 (5th Cir.1998). *But see Brazelton v. State,* 947 S.W.2d 644, 649 (Tex.App.-Fort Worth 1997, no pet.), where that court held that the unavailability of legal alternatives is not a requirement of the defense of necessity.