In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00188-CR
______________________________


CHRIS HUBBARD, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 01F0561-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Chris Hubbard awoke in his prison cell to find that his cellmate, Ronder Townsel, had pulled
down Hubbard's boxer shorts, climbed on Hubbard's back, pressed his forearm to the back of
Hubbard's neck to hold him down, and begun trying to rape him. During the ensuing struggle,
Townsel was injured worse than Hubbard. In fact, Townsel's resulting broken ribs and sternum
caused infection and ultimately death.


 Charged with the capital murder of Townsel, Hubbard was
denied a requested jury instruction on the issue of necessity, was convicted of the lesser-included
offense of manslaughter, had his punishment enhanced, and was sentenced to life imprisonment and
a $10,000.00 fine. On appeal, Hubbard asserts the trial court erred in refusing to give his requested
jury instruction on necessity and in allowing inadmissible testimony. We reverse on the necessity
issue and remand to the trial court for a new trial.
            The Texas Penal Code makes necessity a defense only if (1) the defendant reasonably
believed his or her conduct was immediately necessary to avoid imminent harm; (2) the desirability
and urgency of avoiding the harm clearly outweighed, according to ordinary standards of
reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a
legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly
appear. Tex. Pen. Code Ann. § 9.22 (Vernon 2003). The rationale of the defense is that, even
though a defendant may have violated the literal language of the criminal law by committing the act
the crime requires, his or her act is justified because it avoided a harm of greater magnitude. 
Arnwine v. State, 20 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, no pet.).
            In keeping with this reasoning, a criminal defendant must not only admit having committed
the action underlying the offense charged in order to properly raise the defense of necessity, but must
also produce evidence at trial that the charged conduct was justified under the circumstances. Id.
at 158. If a defendant thus raises the issue and properly requests an instruction, the trial court must
include it in the jury charge; and, failing that, abuses its discretion. Brown v. State, 955 S.W.2d 276,
279 (Tex. Crim. App. 1997). This is true "regardless of whether [the evidence] is strong, feeble,
unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not
entitled to belief," id., because the rule "is designed to insure that the jury, not the judge, will decide
the relative credibility of the evidence." Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)
(citing Woodfox v. State, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987)).
            Hubbard contends the trial court erred in denying his requested jury instruction on the issue
of necessity. The State's response to this contention is twofold: (1) Hubbard failed to admit any
offense as required for submission of a necessity defense; (2) even if Hubbard sufficiently admitted
an offense, he failed to establish that his conduct was immediately necessary to prevent imminent
harm. We address these arguments in turn.
 
Must Defendant Admit Offense?
            Certainly, before being allowed the necessity defense, a criminal defendant must admit 
having committed the offense with which he or she is charged; however, caselaw is unclear as to
exactly what must be admitted. The Texas Court of Criminal Appeals has stated: "In order to raise
necessity, a defendant admits violating the statute under which he is charged and then offers
necessity as justification which weighs against imposing a criminal punishment for the act[] or acts
which violated the statute." Young v. State, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). On other
occasions, however, the court has observed that such a sweeping premise—that all defenses require
a defendant to admit having committed the charged offense—is incorrect.


 Willis v. State, 790
S.W.2d 307, 313–14 (Tex. Crim. App. 1990); see Golden v. State, 851 S.W.2d 291, 295 (Tex. Crim.
App. 1993) (defendant not always required to admit offense to get defensive instruction).
            The lower courts, too, have been inconsistent about whether a defendant must admit
committing the offense before being entitled to a defensive instruction. While some courts have
strictly held that a defendant must specifically admit the offense, including the culpable mental state
the crime requires, see, e.g., Allen v. State, 971 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.]
1998, no pet.); Klein v. State, 662 S.W.2d 166, 170 (Tex. App.—Corpus Christi 1983, no pet.); see
Andujo v. State, No. 14-00-00693-CR, 2001 Tex. App. LEXIS 4629, at *3 (Tex. App.—Houston
[14th Dist.] July 12, 2001, pet. ref'd) (not designated for publication); Robledo v. State, No.
03-97-00094-CR, 1998 Tex. App. LEXIS 7719, at *22 (Tex. App.—Austin Dec. 17, 1998, no pet.)
(not designated for publication), other courts have been more willing to afford defendants defensive
instructions when they have demonstrated some evidence on each element of the defense—even
though a defendant may dispute certain elements of the crime as alleged in the indictment, see, e.g.,
Jackson v. State, 110 S.W.3d 626, 631–32 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd);
Withers v. State, 994 S.W.2d 742, 745–46 (Tex. App.—Corpus Christi 1999, pet. ref'd); Holloman
v. State, 948 S.W.2d 349, 351–52 (Tex. App.—Amarillo 1997, no writ).
            Representative of the first category of cases, McGarity v. State, 5 S.W.3d 223 (Tex.
App.—San Antonio 1999, no pet.), and Aldrich v. State, 53 S.W.3d 460 (Tex. App.—Dallas 2001),
aff'd, 104 S.W.3d 890 (Tex. Crim. App. 2003), strictly adhere to the principle that a defendant must
admit all the elements of the offense charged. In McGarity, the Fourth Court of Appeals emphasized
that "one cannot establish that an act is justified without first identifying, or admitting to the
commission of the act." McGarity, 5 S.W.3d at 227. Although the defendant admitted throwing the
victim onto a bed, causing her physical injuries, because he never admitted to the act charged in the
indictment—striking the victim in the face with his hand—the court held that the defendant failed
to properly raise the defense of necessity. Id. In Aldrich, the Fifth Court of Appeals similarly
determined the defendant failed to properly raise the issue of necessity when the defendant, charged
with impersonating a public servant, admitted saying she was a peace officer, but denied ever telling
anyone to "turn around and place their hands behind their back." Aldrich, 53 S.W.3d at 468. 
Because the indictment alleged the defendant impersonated a peace officer by demanding an
individual "turn around and be arrested," however, the court concluded she not only failed to admit
the indictment's allegations, but specifically denied them. Id. (emphasis added).
            If we were to adopt this reasoning, we would be forced to conclude that, because Hubbard's
testimony falls short of admitting all the elements of the offense charged in the indictment, he is not
entitled to a defensive instruction. The indictment in this case alleged Hubbard intentionally or
knowingly caused Townsel's death by striking him with his hand (or some other object) or by kicking
him with his foot. While Hubbard never admitted intentionally or knowingly—or even
recklessly—causing Townsel's death, he did admit causing the injuries, which the medical examiner
testified ultimately led to the infection that killed Townsel.
            Hubbard testified Townsel jumped on his back as he slept, pulled down his pants, and
attempted to rape him. After struggling to get Townsel off of his bunk, Hubbard testified he tackled
Townsel, with both falling to the floor, and hit him repeatedly in the chest, causing fractures to
Townsel's sternum and to a number of his ribs. 
            Nevertheless, according to those cases in the first category discussed, because Hubbard never
admitted intentionally or knowingly (as charged)—or recklessly (as needed for the lesser-included
offense of manslaughter)—causing Townsel's death, he did not properly raise the issue of necessity,
and the trial court correctly denied his requested instruction—despite the fact he admitted causing
the injuries that resulted in Townsel's death by taking the physical actions alleged. See Allen, 971
S.W.2d at 720 (admitting offense includes admitting culpable mental state the crime requires). We
find more convincing, and a better statement of the law, those cases in the second category, allowing
a defensive instruction when the defendant has presented evidence on each of the elements of the
statutory defense and admitted at least some participation in the action underlying the offense
charged.
            Citing Willis and Golden, the Seventh Court of Appeals held a defendant was entitled to a
self-defense instruction even without admitting the particular physical act alleged in the charging
instrument. Holloman, 948 S.W.2d at 352. The court reasoned that "[i]t would be nonsensical to
prohibit the defendant from claiming self-defense" because, regardless of the manner in which it was
used, he admitted using "force." Id. (citing Tex. Pen. Code Ann. § 9.31(a) ("force" justified under
certain circumstances)). "In other words, if evidence is presented which discloses that the defendant
used force in repelling the attack of another . . . there is no legitimate reason why he should be denied
the defense simply because he refused to admit to using the type of force alleged by the State." 
Holloman, 948 S.W.2d at 352.
            Agreeing with this reasoning, the Thirteenth Court of Appeals reversed a trial court for
erroneously denying the defendant's requested jury instructions on similar grounds. Withers, 994
S.W.2d at 745–46. In Withers, the defendant testified that, when she attempted to break up a
classroom argument, she became embroiled in a physical contest with a special education student. 
Id. She admitted that, when the student grabbed her blouse in such a way that it choked her, and then
refused to let go, she used a technique she had been taught in her special education training, which
resulted in the student releasing her and rolling face down on the floor. The defendant then exerted
pressure on the student's back to keep him still while she caught her breath. Id. at 744. The State
argued that, despite these admissions, the defendant was not entitled to her requested defensive
instructions because she specifically denied the conduct for which she was indicted. Id. at 745–46. 
Applying the Holloman analysis, however, the court determined that she adequately admitted the
conduct required to raise the defensive issues, not only of self-defense, but also of defense of a third
person and necessity. Id. at 746.
            We agree with the general rule that a defendant must admit the conduct charged in the
indictment and then offer evidence justifying the conduct. Young, 991 S.W.2d at 839; Anderson v.
State, 11 S.W.3d 369, 372 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "Admitting the
conduct, however, does not necessarily mean admitting the commission of every statutory element
of the offense." Jackson, 110 S.W.3d at 631 (citing East v. State, 76 S.W.3d 736, 738 (Tex.
App.—Waco 2002, no pet.)). That is, even if a defendant denies the specific allegations in the
indictment, he or she is not necessarily precluded from raising defensive issues as long as he or she
sufficiently admits conduct underlying the offense and provides evidence justifying a defensive
instruction. Jackson, 110 S.W.3d at 631–32 (citing Kemph v. State, 12 S.W.3d 530, 532 (Tex. 
 
App.—San Antonio 1999, pet. ref'd); Torres v. State, 7 S.W.3d 712, 715 (Tex. App.—Houston [14th
Dist.] 1999, pet. ref'd)).
            The record evidence already cited clearly establishes that, although Hubbard did not admit
intentionally, knowingly, or recklessly causing Townsel's death, he did admit the conduct underlying
the offense, that is, striking Townsel. We hold this admission sufficient to satisfy the admission
element required to raise the issue of necessity.
Was There Evidence of Immediate Necessity?
            The State further questions Hubbard's entitlement to a defensive instruction, arguing he failed
to establish his conduct was immediately necessary to avoid imminent harm. 
            Comparing the situation Hubbard faced with the situation outlined in Castaneda v. State, 28
S.W.3d 216 (Tex. App.—El Paso 2000, pet. ref'd), the State urges this Court to find unreasonable
as a matter of law Hubbard's belief that action was immediately necessary to avoid imminent harm
because he had ample time to consider the law. We have previously stated that "a defendant's belief
that conduct was immediately necessary to avoid imminent harm may be deemed unreasonable as
a matter of law if undisputed facts demonstrate a complete absence of immediate necessity or
imminent harm." Arnwine, 20 S.W.3d at 159 (citing Brazelton v. State, 947 S.W.2d 644, 648–49
(Tex. App.—Fort Worth 1997, no pet.)). Nevertheless, because the present case is distinguishable
from cases like Castaneda, we are unable to state, as a matter of law, that Hubbard's belief was
unreasonable.
 
            Castaneda was convicted of manslaughter and of five counts of aggravated assault after firing
several rifle rounds into a group of people, killing one. Castaneda, 28 S.W.3d at 219. The trouble
began when he barged into his estranged girlfriend's apartment, broke up a party, followed the group
outside, and provoked a "pushing match." Id. Castaneda testified that, before this encounter turned
into a fistfight, he turned back toward the apartment and began walking up the stairs. As he did so,
someone from the group punched Castaneda on the shoulder and back, and sprayed him in the face
with some form of mace, pepper spray, or tear gas. Id. at 225. The court recounted what happened
next, concluding Castaneda had ample time to consider the law before responding as he did.
It is undisputed that no one followed Castaneda back to the apartment. Rather, he
retreated alone, though perhaps panicked from the spray. Although no one had
pursued him, he entered the bedroom, found the rifle, left the apartment, and
descended the flight of stairs before firing into the night. This simply does not raise
an issue on necessity.

Id.
            Hubbard was faced with an entirely different scenario. According to his testimony, he had
previously warded off one sexual assault by applying significant force on Townsel.


 Thereafter,
Townsel awakened him with his attempt to rape him. Townsel held Hubbard down with his forearm
and began sucking on his ear and trying to rape him before Hubbard elbowed him and head-butted
him in the face. Hubbard then tackled Townsel, and the two landed on the floor. Hubbard and
Townsel continued struggling with each other, until Hubbard managed to get Townsel on his back,
to hit him in the face, and to bloody his nose. Hubbard stopped fighting at this point and stood up,
but Townsel came at him again. The fight only ended after they had again fallen to the floor and
wrestled for some time. 
            Seizing on Hubbard's testimony describing what happened directly after he head-butted
Townsel to get him off of his bunk, the State maintains Hubbard had time for reflection before
beating Townsel with such force he caused several fractures to Townsel's ribs—reportedly the cause
of the infection that ultimately killed Townsel. Hubbard said: "[Townsel] had got up, he was
standing, just standing there with no clothes on. I got up and just went at him." Contrary to the
State's position that this indicated Hubbard had become the aggressor, however, our review of the
record suggests that these events took place within a very short time and that Townsel was not easily
dismissed. It is instructive that Townsel attacked Hubbard again even after Hubbard testified he had
bloodied Townsel's nose, and possibly even after the ultimately lethal chest punches by
Hubbard—after Hubbard started to walk away from the fight. Under the circumstances, and
considering that a defendant's testimony alone is sufficient to raise a defensive issue requiring an
instruction in the jury charge, Pennington v. State, 54 S.W.3d 852, 856 (Tex. App.—Fort Worth
2001, pet. ref'd), we cannot say Hubbard's belief that action was immediately necessary to avoid
imminent harm was unreasonable. He was locked in a cell, alone with his attacker, and, unlike
Castaneda, had no place of safety into which he could retreat. Following the formulation of the
Texas Penal Code Section 9.22 requirements, we conclude Hubbard presented evidence (1) that he
reasonably  believed  repeatedly  hitting  Townsel  was  immediately  necessary  to  avoid  being
raped; (2) that the desirability and urgency of avoiding being raped clearly outweighed, according
to ordinary standards of reasonableness, the harm sought to be remedied by the laws proscribing
assault; and (3) that there appears to be no legislative purpose to exclude the justification in this
circumstance. See Tex. Pen. Code Ann. § 9.22. Thus, the jury should have been instructed on
necessity.
Conclusion
            Having determined that Hubbard presented evidence on each of the elements of the necessity
defense and admitted the actions underlying the offense charged, we need not reach his second point
of error alleging the trial court erred by allowing inadmissible testimony. Because Hubbard was
entitled to an instruction on the defense of necessity, we reverse the judgment of the trial court and
remand for further proceedings.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          March 4, 2004
Date Decided:             April 2, 2004

Publish