# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAIME CASAS JUAREZ, JR.,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jaime Casas Juarez, Jr. appeals his conviction for aggravated assault against a public servant. In one issue, Appellant argues that the trial court erred in refusing to submit to the jury his request for an instruction on the statutory defense of necessity. We reverse and remand.

### BACKGROUND

Appellant was charged by indictment with aggravated assault on a public servant by intentionally, knowingly, or recklessly causing serious bodily injury to Officer J. H. Burge by biting him with his teeth and mouth, a first degree felony.[1] In the alternative, the indictment also alleged that he committed aggravated assault on a public servant by using or exhibiting a deadly weapon, his teeth and mouth, during the commission of the assault.[2] Finally, the indictment alleged that Appellant used or exhibited the deadly weapon, his teeth and mouth, in such a manner and means

---

[1] *See* TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon Supp. 2008). A person commits the offense of aggravated assault if he commits assault and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. *See id.* § 22.02(a)(1), (2). An offense under this section is a felony of the first degree if the offense was committed against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty as a public servant. *See id.* § 22.02(b)(2)(B).

[2] *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2008).

that its use and intended use was capable of causing death and serious bodily injury, during commission of or immediate flight from the offense.[3]  Appellant pleaded "not guilty."

At the jury trial, Officer Burge, a police officer with the Tyler Police Department, testified that on the date of the incident, he was dispatched to an apartment complex in Tyler, Texas at 3:00 a.m. because several people were reportedly breaking into vehicles there.  He and two other officers entered the complex on foot in uniform, "try[ing] to catch them in the act."  At the back of the complex, Burge discovered an undetermined number of people inside a vehicle and another person standing outside it.  Various items were already on the ground beside the vehicle.  Burge testified that, at first, he and the other officers watched and determined that there were three people in or around the vehicle.  However, the officers were soon discovered.  Burge and another officer immediately yelled at the people to stop and identified themselves as police.  No one stopped; instead, they began to run. While the other two officers chased the other suspects through the middle of the complex, Burge chased one person around the west side of the complex, around a building, and finally located him sitting on some steps.  He identified that person as Appellant.

Burge stated that Appellant appeared sweaty, tired, and exhausted, and that he stood and put his hands up in the air when he saw the officer.  Burge testified that when he grabbed Appellant's right arm to put him in handcuffs, Appellant immediately pulled away.  According to Burge, he grabbed Appellant again, and then both of them immediately went to the ground facing each other.  Burge stated that he screamed at Appellant to stop resisting, hoping that someone else or the other officers would hear him.  Burge stated that Appellant finally turned over in a "push-up position," but he was unable to get Appellant's hands behind him.  Burge testified that, at this point, both of his hands were on Appellant's shoulders holding him down, and that he realized no one was coming to help him.

Burge stated that he removed his right hand from Appellant's shoulders in order to radio his location to the other officers.  Immediately after Burge released the button on his radio, Appellant turned his head to his left and bit Burge's left index finger.  Burge stated that, after Appellant bit down on his finger, he stood up, ordered Appellant to let go, and began hitting Appellant with a closed fist on his back to force Appellant to release his finger.  Even though Appellant stood up, he

---

[3] *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2008).

2

did not release Burge's finger. Burge stated that another officer arrived and struck Appellant, who then released Burge's finger. According to Burge, he was in "excruciating pain," his finger was numb, and he sustained lacerations.

Appellant admitted that in the early morning on the date of the incident, he, his cousin, and a friend were at an apartment complex breaking into vehicles. While he was helping take out a speaker box or an amp from the trunk of a vehicle, his cousin noticed someone "peeking around the corner" of the complex. When he informed them that someone was watching them, all of them began to run. Appellant stated that he heard someone say "stop," but he kept running, and ultimately ducked beside a bush in the dark, hoping to hide and regain his breath. Then, he saw a man come around the corner and "flash [a] light on" him. Appellant testified that he stood up to run and stumbled. Someone then jumped on his back, put his arms around him, and slammed him to the ground. Appellant stated that when he hit the ground, he could not breathe because he was already out of breath. Because he heard a radio, Appellant believed that the man on top of him was a police officer.

According to Appellant, the police officer, Burge, had his knee on Appellant's back, his hand was above Appellant's head, and he was "pushing on" Appellant's head and mouth. He tried to tell Burge to get off him because he could not breathe, thought he would suffocate, and feared for his life. Appellant stated that he was "breathing in dirt," and started to feel lightheaded and dizzy as if he were going to suffocate or faint. At one point, Appellant testified, as Burge pushed on his head, Burge's finger was in front of his face and around his cheek. Somehow, he got Burge's finger in his mouth and bit down. He explained that he bit Burge's finger to get the officer off him because he thought that he would die otherwise. After Appellant bit him, Burge stood up and Appellant released his finger and also stood up. Although Appellant admitted knowing Burge was a police officer and that he bit Burge's finger, Appellant denied "intentionally, knowingly, or recklessly" biting Burge's finger.

In his objections to the jury charge, Appellant's counsel asserted that he had raised the necessity defense and requested a jury instruction on it. Specifically, Appellant's counsel stated that Appellant admitted biting Burge's finger and that the defense applied even if he intentionally and wilfully created the situation making the illegal conduct necessary. The State objected, stating that Appellant denied culpability for the charged offense. The State also contended that Appellant was

3

not entitled to the instruction because he was the person responsible for having placed himself in the position from which he attempted to extricate himself by committing a criminal offense. After considering the arguments of counsel, the evidence, and case law, the trial court denied Appellant's request for a jury instruction on the defense of necessity. After the trial concluded, the jury found Appellant guilty as charged in the indictment. The jury also made an affirmative finding that Appellant used or exhibited a deadly weapon, i.e., his teeth and mouth, and assessed his punishment at fifty years of imprisonment and a $5,000.00 fine.[4] This appeal followed.

### NECESSITY DEFENSE

In his sole issue on appeal, Appellant argues that the trial court erred in refusing to submit to the jury his request for an instruction on the statutory defense of necessity. The State disagrees, contending that Appellant refused to admit to each element of the charged offense, that the contemplated harm was not imminent, and that Appellant was not entitled to a jury instruction on necessity because he was responsible for having placed himself in the position from which he attempted to extricate himself by committing a criminal offense.

**Standard of Review**

In general, a defendant is entitled to an instruction on every defensive issue raised by the evidence, regardless of whether the evidence is strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). The defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987); *Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982) (quoting *Warren v. State*, 565 S.W.2d 931, 933-34 (Tex. Crim. App. 1978)). When evidence from any source raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury. *Darty v. State*, 994 S.W.2d 215, 218 (Tex. App.–San Antonio 1999, pet. ref'd).

---

[4] An individual adjudged guilty of a first degree felony shall be punished by imprisonment for life or for any term of not more than ninety-nine years or less than five years and, in addition, a fine not to exceed $10,000. *See* TEX. PENAL CODE ANN. § 12.32 (Vernon 2003).

4

Thus, if the issue is raised by any party, refusal to submit the requested instruction is an abuse of discretion. *Id.* We review the evidence offered in support of a defensive issue in the light most favorable to the defense. *Pennington v. State*, 54 S.W.3d 852, 856 (Tex. App.–Fort Worth 2001, pet. ref'd).

**Applicable Law**

Section 9.22 of the Texas Penal Code provides that conduct is justified if

(1)     the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2)     the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3)     a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). Necessity is justification for conduct that would otherwise be criminal. *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). The defense of justification based on necessity is assessed from the standpoint of the accused. *Arnwine v. State*, 20 S.W.3d 155, 159 (Tex. App.–Texarkana 2000, no pet.). The requirements of section 9.22, subsections (1) and (2), must be satisfied by the evidence, while subsection (3) presents a question of law. *Pennington*, 54 S.W.3d at 857.

A defendant must admit the conduct charged in the indictment, but such admission does not necessarily mean admitting the commission of every statutory element of the offense. *Hubbard v. State*, 133 S.W.3d 797, 801 (Tex. App.–Texarkana 2004, pet.ref'd); *Jackson v. State*, 110 S.W.3d 626, 631 (Tex. App.–Houston [14th Dist.] 2003, pet. ref'd). That is, even if a defendant denies the specific allegations in the indictment, he is not necessarily precluded from raising a defensive issue as long as he sufficiently admits conduct underlying the offense and provides evidence justifying a defensive instruction. *Hubbard*, 133 S.W.3d at 801-02.

A defendant is required to present evidence that he reasonably believed a specific harm was imminent. *Pennington*, 54 S.W.3d at 857. "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. *Id.*; TEX. PENAL CODE ANN. § 1.07(a) (Vernon Supp. 2008). "Imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *Pennington*, 54 S.W.3d at 857;

5

*Darty*, 994 S.W.2d at 218. Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm. *Pennington*, 54 S.W.3d at 857 (quoting *Jackson v. State*, 50 S.W.3d 579, 594-95 (Tex. App.–Fort Worth 2001, pet. ref'd); *Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.–Houston [14th Dist.] 1994, pet. ref'd)).

The plain language of section 9.22, subsection (3), evinces a legislative intent that the defense apply to all offenses unless the legislature specifically excluded it from them. *Spakes v. State*, 913 S.W.2d 597, 598 (Tex. Crim. App. 1996).

## Analysis

In determining whether the trial court erred in refusing to instruct the jury on the defense of necessity, we note that the evidence at trial shows Appellant admitted that he bit Burge's finger and that he knew Burge was a police officer. Even though he refused to admit that he intentionally, knowingly, or recklessly bit the police officer's finger, we conclude that Appellant sufficiently admitted to the conduct underlying the charged offense to satisfy the admission element. *See Hubbard*, 133 S.W.3d at 801-02 (determining that appellant's admission to the conduct underlying the offense, that is, striking the victim, was sufficient to satisfy the admission element even though he denied intentionally, knowingly, or recklessly causing the victim's death); *Jackson*, 110 S.W.3d at 631-32.

At trial, Appellant testified that he was already out of breath when Burge threw him to the ground. Appellant stated that when Burge held him down on the ground, his head and mouth were being pushed into the ground, that he could not breathe, and that he began to feel lightheaded and dizzy. He stated that he thought he would suffocate, and feared for his life. Appellant testified that he bit Burge's finger to get him off his back because he thought he would die otherwise. Thus, Appellant presented evidence that he reasonably believed a specific harm was imminent, i.e., suffocation, that there was an emergency situation, and that the harm was impending, not pending. *See Pennington*, 54 S.W.3d at 857. Viewed from Appellant's standpoint, we conclude that an ordinary and prudent person in the same circumstances would hold the same belief that biting Burge's finger was immediately necessary to avoid the imminent harm of suffocating. *See id.* at 858. Further, the urgency of Appellant's not being able to breathe due to his face being held in the dirt outweighs the harm from Appellant's biting Burge's finger to release him. *See Darty*, 994 S.W.2d at 219. Thus, we conclude that Appellant presented evidence that he reasonably believed his conduct

6

was immediately necessary to avoid a imminent harm and that the urgency of avoiding that harm outweighed the harm sought to be prevented by the law proscribing the conduct. *See* TEX. PENAL CODE ANN. § 9.22(1), (2); *Pennington*, 54 S.W.3d at 856-7.

To determine if the legislature specifically excludes the defense of necessity for the underlying offense, we look at sections 22.01 and 22.02 of the Texas Penal Code. A person commits the offense of aggravated assault if the person commits assault as defined in section 22.01 and the person causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(1),(2). A person commits the offense of assault if the person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01 (a)(1) (Vernon Supp 2008). We see nothing in the text of either section that plainly indicates a legislative purpose to limit the necessity defense's application. *See Bowen v. State*, 162 S.W.3d 226, 229 (Tex. Crim. App. 2005). Thus, we conclude that the necessity defense applies to the offense charged. *See* TEX. PENAL CODE ANN. § 9.22(3).

Because Appellant sufficiently admitted to committing the offense and raised the issue of necessity at trial, he has satisfied the judicially imposed prerequisite to requesting a necessity instruction. *See Bowen*, 162 S.W.3d at 230. Thus, the trial court erred in refusing to submit to the jury Appellant's request for an instruction on the statutory defense of necessity. However, an erroneous or incomplete jury charge does not result in automatic reversal of a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Article 36.19 of the Texas Code of Criminal Procedure prescribes the manner in which jury charge error is reviewed on appeal.[5] *Abdnor*, 871 S.W.2d at 731; *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), overruled on other grounds by *Rodriguez v. State*, 758 S.W.2d 787 (Tex. Civ. App. 1988). When reviewing charge error, we must undertake a two step review: (1) determine whether error actually exists in the charge, and (2) determine whether sufficient harm resulted from the error to

---

[5] Article 36.19 provides that "whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. All objections to the charge and to the refusal of special charges shall be made at the time of trial." *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006).

require reversal. *Abnor*, 871 S.W.2d at 731-32. We have already determined that there was error in the jury charge.

The standard to determine whether sufficient harm resulted from the charge error to require reversal depends upon whether the appellant objected. *Id.* at 732. Here, Appellant timely objected at trial. Thus, we will search only for "some harm," and reversal is required if the error is "calculated to injure the rights of the defendant," or "as long as the error is not harmless." *Id.* (quoting *Almanza*, 686 S.W.2d at 171). More specifically, the presence of "*any* harm, regardless of degree" is sufficient to require reversal. *Id.* (quoting *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) (emphasis in original)). When conducting a harm analysis, we may consider four factors: (1) the charge itself; (2) the state of the evidence including contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch*, 922 S.W.2d at 171.

Regarding the evidence, Appellant and the State presented conflicting versions of the facts. *See Darty*, 994 S.W.2d at 220. Appellant consistently testified that he feared he would suffocate while being held to the ground by Burge, and that he bit Burge's finger in order to avoid that harm. Burge stated that Appellant struggled and used foul language while being forcibly held to the ground.

During closing arguments, the State argued that Appellant intended to bite Burge in an attempt to get away because he had a warrant for his arrest and was "caught burglarizing vehicles." According to the State, Appellant saw that he had an opportunity to get away when Burge radioed for help and thus, Appellant bit him. The State also contended that there was "nothing in [the] charge, nothing at all, about any legal excuse, any legal excuse or any legal justification [for] what [Appellant] did." Twice more, the State argued that there was no legal justification for Appellant's action. Appellant's counsel repeated Appellant's allegation that he bit Burge to get him off his back because he thought he was suffocating.

In summary, Appellant clearly admitted biting Burge's finger, but the State argued that there was no legal justification for his action. Because the jury charge did not include a necessity defense, the jury was not free to interpret the evidence in such a way that supported a finding of necessity if they believed Appellant's justification defense. The trial court's failure to instruct the jury on necessity precluded this interpretation. *See Bowen v. State*, 187 S.W.3d 744, 747 (Tex. App.–Fort Worth 2006, no pet.). Therefore, we conclude that Appellant suffered some harm from the trial

8

court's refusal to submit to the jury his request for an instruction on the statutory defense of necessity. *See Abnor*, 871 S.W.2d at 732. Accordingly, we sustain Appellant's sole issue.

### DISPOSITION

Having sustained Appellant's sole issue, we *reverse* the trial court's judgment and *remand* the case to the trial court for a new trial.

**SAM GRIFFITH**
Justice

Opinion delivered March 25, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)