ACCEPTED
01-14-00593-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/12/2015 9:32:04 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00593-CR**

In the
**Court of Appeals for the First District of Texas**
At Houston

———————◆———————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/12/2015 9:32:04 PM

CHRISTOPHER A. PRINE
Clerk

**No. 1344348**
In the 338th District Court
Of Harris County, Texas

———————◆———————

**TONY ESCOBAR**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**JUSTIN WOOD**
**JULIE GRANDT**
Assistant District Attorneys
Harris County, Texas

**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
State Bar No. 24058991

1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
Fax No.: 713/755-5809

*Counsel for Appellee*

ORAL ARGUMENT WAIVED

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

**COUNSEL FOR THE STATE:**

Ms. Devon Anderson—District Attorney

Mr. Justin Wood
Ms. Julie Fletcher Grandt —Assistant District Attorneys at trial

Ms. Heather Hudson—Assistant District Attorney on appeal

**APPELLANT:**

Tony Escobar

**COUNSEL FOR APPELLANT:**

Sam Adamo—Counsel at trial

Wayne T. Hill—Counsel on appeal

**PRESIDING JUDGE:**

Hon. A. Reagan Clark

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 39.7, the State waives oral argument.

## TABLE OF CONTENTS

IDENTIFICATION OF THE PARTIES ....................................................................i

STATEMENT REGARDING ORAL ARGUMENT................................................ ii

INDEX OF AUTHORITIES..................................................................................iv

STATEMENT OF THE CASE..............................................................................1

STATEMENT OF FACTS ...................................................................................1

REPLY TO APPELLANT'S FIRST AND SECOND POINTS OF ERROR............9

    I.    Standard of review and applicable law. ..................................................9

    II.   The evidence is sufficient to support appellant's conviction as a party to the offense...................................................................................11

    III.  Appellant's guilt as a co-conspirator......................................................13

    IV.  The accomplice-witness testimony is sufficiently corroborated by other evidence. .................................................................................16

REPLY TO APPELLANT'S THIRD POINT OF ERROR .....................................18

    I.    Standard of review and applicable law. ................................................19

    II.   The trial court did not abuse its discretion in admitting the 911 recording into evidence....................................................................20

REPLY TO APPELLANT'S FOURTH POINT OF ERROR.................................21

REPLY TO APPELLANT'S FIFTH POINT OF ERROR .....................................26

    I.    Preservation of error...........................................................................27

    II.   Harm analysis. ....................................................................................28

REPLY TO APPELLANT'S SIXTH, SEVENTH,.......................................................29

AND EIGHTH POINTS OF ERROR ....................................................................29

    I.    Relevant background. ................................................................29

    II.    Appellant's sixth point of error presents nothing for appellate review. .................................................................................32

    III.    Amber Thornton's statement was not admissible as a statement of a co-conspirator under Rule 801(e)(2)(E). .............................................32

    IV.    Amber Thornton's statement was not admissible under the Rule of Optional Completeness......................................................35

REPLY TO APPELLANT'S NINTH POINT OF ERROR ....................................38

    I.    Appellant's ninth point of error has not been preserved for review. ..........................................................................38

    II.    A single instance of a witness's prior conduct is not admissible as evidence of habit under Rule of Evidence 406. .....................................40

REPLY TO APPELLANT'S TENTH POINT OF ERROR.....................................40

    I.    Standard of review and applicable law. ................................................40

    II.    The evidence does not raise the issue of necessity. ..............................42

REPLY TO APPELLANT'S ELEVENTH POINT OF ERROR.............................45

REPLY TO APPELLANT'S TWELFTH POINT OF ERROR ..............................47

CONCLUSION AND PRAYER ............................................................................49

CERTIFICATE OF COMPLIANCE .....................................................................49

CERTIFICATE OF SERVICE ..............................................................................50

# INDEX OF AUTHORITIES

## CASES

*Allen v. State*,
788 S.W.2d 637 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd) ...................35

*Almanza v. State*,
686 S.W.2d 157 (Tex. Crim. App. 1984)...............................................................41

*Anderson v. State*,
15 S.W.3d 177 (Tex. App.--Texarkana 2000, no pet.)..........................................40

*Arnwine v. State*,
20 S.W.3d 155 (Tex. App.--Texarkana 2000, no pet.)..........................................42

*Beier v. State*,
687 S.W.2d 2 (Tex. Crim. App. 1985)...................................................................12

*Bigby v. State*,
892 S.W.2d 864 (Tex. Crim. App. 1994)...............................................................17

*Bourjaily v. United States*,
483 U.S. 171 (1987) ...............................................................................................33

*Brazelton v. State*,
947 S.W.2d 644 (Tex. App.--Fort Worth 1997, no pet.).......................................42

*Brooks v. State*,
323 S.W.3d 893 (Tex. Crim. App. 2010).................................................................9

*Bundy v. State*,
280 S.W.3d 425 (Tex. App.--Fort Worth 2009, pet. ref'd)...................................27

*Busby v. State*,
253 S.W.3d 661 (Tex. Crim. App. 2008)...............................................................32

*Byrd v. State*,
187 S.W.3d 436 (Tex. Crim. App. 2005)...............................................................33

*Castillo v. State*,
221 S.W.3d 689 (Tex. Crim. App. 2007)...............................................................16

*Clayton v. State*,
235 S.W.3d 772 (Tex. Crim. App. 2007).................................................................9

*Conner v. State*,
    67 S.W.3d 192 (Tex. Crim. App. 2001).....................................................................9

*Cordova v. State*,
    698 S.W.2d 107 (Tex. Crim. App. 1985)................................................................10

*Deeb v. State*,
    815 S.W.2d 692 (Tex. Crim. App. 1991)................................................................33

*Dowthitt v. State*,
    931 S.W.2d 244 (Tex. Crim. App. 1996)................................................................16

*Estrada v. State*,
    313 S.W.3d 274 (Tex. Crim. App. 2010)................................................................21

*Flores v. State*,
    299 S.W.3d 843 (Tex. App.--El Paso 2009, pet. ref'd) ................................. 22, 25

*Gear v. State*,
    340 S.W.3d 743 (Tex. Crim. App. 2011)..................................................................9

*Gilbert v. State*,
    No. PD-1645-08, 2010 WL 454966 (Tex. Crim. App. Feb. 10, 2010) (not
    designated for publication)....................................................................................43

*Goad v. State*,
    354 S.W.3d 443 (Tex. Crim. App. 2011)................................................................46

*Goldberg v. State*,
    95 S.W.3d 345 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd) .......................36

*Harris v. State*,
    152 S.W.3d 786 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd).....................34

*Harrison v. State*,
    421 S.W.3d 39 (Tex. App.--Waco 2013, pet. ref'd) ..................................... 41, 42

*Hooper v. State*,
    214 S.W.3d 9 (Tex. Crim. App. 2007)..................................................................9, 10

*Hutch v. State*,
    922 S.W.2d 166 (Tex. Crim. App. 1996)................................................................40

*Jackson v. Virginia*,
    443 U.S. 307 (1979) ................................................................................................9

*Juarez v. State*,
    308 S.W.3d 398 (Tex. Crim. App. 2010)................................................................41

*King v. State*,
189 S.W.3d 347 (Tex. App.--Fort Worth 2006, no pet.)........................................33

*King v. State*,
29 S.W.3d 556 (Tex. Crim. App. 2000)......................................................11, 25

*Kitchens v. State*,
823 S.W.2d 256 (Tex. Crim. App. 1991)..........................................................10

*Krulewitch v. United States*,
336 U.S. 440 (1949) ..........................................................................................33

*Long v. State*,
823 S.W.2d 259 (Tex. Crim. App. 1991)..........................................................22

*Malik v. State*,
953 S.W.2d 234 (Tex. Crim. App. 1997)..........................................................10

*Martinez v. State*,
327 S.W.3d 727 (Tex. Crim. App. 2010)..........................................................19

*Mays v. State*,
285 S.W.3d 884 (Tex. Crim. App. 2009)..........................................................27

*Middleton v. State*,
125 S.W.3d 450 (Tex. Crim. App. 2003)..........................................................41

*Montgomery v. State*,
810 S.W.2d 372 (Tex. Crim. App. 1990)................................................... 19, 20

*Mosley v. State*,
983 S.W.2d 249 (Tex. Crim. App. 1998)..........................................................14

*Motilla v. State*,
78 S.W.3d 352 (Tex. Crim. App. 2002)............................................................28

*Murkledove v. State*,
437 S.W.3d 17 (Tex. App.--Fort Worth 2014, pet. dism'd) ..............................45

*Pena v. State*,
285 S.W.3d 459 (Tex. Crim. App. 2009)..........................................................39

*Penry v. State*,
903 S.W.2d 715 (Tex. Crim. App. 1995)..........................................................22

*Ramirez v. State*,
422 S.W.3d 898 (Tex. App.--Houston [14th Dist.] 2014, pet. ref'd) ..................47

*Ransom v. State*,
920 S.W.2d 288 (Tex. Crim. App. 1994) (op. on reh'g) ...................................11

*Reyna v. State*,
    168 S.W.3d 173 (Tex. Crim. App. 2005)...................................................... 28, 39

*Rodriguez v. State*,
    368 S.W.3d 821 (Tex. App.--Houston [14th Dist.] 2012, no pet.) .......................43

*Rousseau v. State*,
    855 S.W.2d 666 (Tex. Crim. App. 1993)................................................................45

*Sanders v. State*,
    255 S.W.3d 754 (Tex. App.--Fort Worth 2008, pet. ref'd)..................................19

*Sauceda v. State*,
    129 S.W.3d 116 (Tex. Crim. App. 2004)...................................................... 36, 37

*Shaw v. State*,
    243 S.W.3d 647 (Tex. Crim. App. 2007)................................................................43

*Stadt v. State*,
    182 S.W.3d 360 (Tex. Crim. App. 2005)................................................................45

*Stewart v. State*,
    686 S.W.2d 118 (Tex. Crim. App. 1984)................................................................27

*Thomas v. State*,
    699 S.W.2d 845 (Tex. Crim. App. 1985)................................................................46

*Tovar v. State*,
    221 S.W.3d 185 (Tex. App.--Houston [1st Dist.] 2006, no pet.)........................36

*Walters v. State*,
    247 S.W.3d 204 (Tex. Crim. App. 2007)...................................................... 36, 41

*Watts v. State*,
    371 S.W.3d 448 (Tex. App.--Houston [14th Dist.] 2012, no pet.) .......................27

*Webb v. State*,
    760 S.W.2d 263 (Tex. Crim. App. 1988)................................................................20

*Yi v. State*,
    No. 01-05-01147-CR, 2007 WL 2052064 (Tex. App.--Houston [1st Dist.] July
    19, 2007, no pet.) (not designated for publication)..............................................21

*Young v. State*,
    991 S.W.2d 835 (Tex. Crim. App. 1999)................................................................44

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013) ...........................................16

TEX. PENAL CODE ANN. § 1.07(a)(42) (West 2013).......................................................42

TEX. PENAL CODE ANN. § 15.02(a) (West 2013)......................................................48

TEX. PENAL CODE ANN. § 15.02(b) (West 2013) ....................................................48

TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2013)...................................................10

TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2013)...................................................14

TEX. PENAL CODE ANN. § 31.03(e)(3) (West 2013)...................................................46

TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2013)....................................................11

TEX. PENAL CODE ANN. § 7.02(b) (West 2013) ......................................................13

TEX. PENAL CODE ANN. § 9.22 (West 2013) ...........................................................41

TEX. PENAL CODE ANN. 31.03(e)(4)(A) (West 2013) ..............................................46

**RULES**

TEX. R. APP. P. 33.1(a)...................................................................................... 39, 48

TEX. R. APP. P. 38.2(a)(1)(A).................................................................................. i

TEX. R. APP. P. 44.2(b)................................................................................... 25, 28

TEX. R. EVID. 103(a)(2)...................................................................................27

TEX. R. EVID. 107..........................................................................................36

TEX. R. EVID. 401.................................................................................... 19, 22

TEX. R. EVID. 403.................................................................................... 19, 25

TEX. R. EVID. 406..........................................................................................40

TEX. R. EVID. 613(a) ......................................................................................34

TEX. R. EVID. 801(e)(2)(E) .............................................................................32

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged by indictment with the offense of capital murder. (C.R. 8). Appellant was tried by a jury and convicted of the charged offense. (C.R. 261-62). Appellant was sentenced to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. (C.R. 261-62). Appellant filed a timely written notice of appeal. (C.R. 271).

## STATEMENT OF FACTS

On the evening of December 20, 2011, Russell Lopez was at home taking care of his seven-year old son Caden, his six-year-old niece Bailey, and his nine-month old daughter Julianne. (4 R.R. 37). Lopez's wife Marie and his cousin, Shonte Mabe, were at work together. (4 R.R. 37). When they got off work shortly after 9:00 that night, Marie tried to call Lopez twice, but was unable to reach him. (4 R.R. 38, 197-98). Mabe gave Marie a ride home. (4 R.R. 38). When they pulled up to Marie's house, they noticed that Lopez's black Tahoe was not in the driveway. (4 R.R. 38).

Upon entering the home, they encountered a gruesome scene. The home had been ransacked and Marie's nine-month-old daughter was sitting on the couch unattended. (4 R.R. 202). Lopez was laying on the bedroom floor covered in blood. (4 R.R. 202). His face was covered with a brown jacket. (4 R.R. 204).

Marie pushed on Lopez's chest, but there was no sign of response. (4 R.R. 204). While Mabe called 911, Marie went to Caden's bedroom to check on the children. (4 R.R. 43, 203). She discovered that Caden and Bailey were unharmed, but their hands and feet had been bound together with Julianne's baby clothes. (4 R.R. 76, 203).

While Marie was in Caden's bedroom with the children, the 911 dispatch operator instructed Mabe to remove the covering from Lopez's face. (4 R.R. 41). Mabe removed the jacket and confirmed that Lopez was not breathing. (4 R.R. 41). Lopez's face was so distorted that he was unrecognizable. (4 R.R. 43). Due to the severe nature of the injuries to Lopez's face, Mabe was unable to perform CPR. (4 R.R. 41, 45).

Paramedics arrived and declared Lopez dead on the scene. (4 R.R. 70). A sword was laying across his left chest and arm. (4 R.R. 72). There was penetrating trauma to Lopez's right cheek, exposing the underlying tissue and bone. (4 R.R. 72). Brain matter and skull fragments were located on the floor beside Lopez's body. (4 R.R. 72). There was blood spatter on the bedroom ceiling. (4 R.R. 73). There was also a large concentration of blood on the floor of the dining room area, as well as bloody trails on the carpet leading to Lopez's body, indicating that his body had been dragged from the dining room to the bedroom. (4 R.R. 106).

Various items had been removed from the home, including a television, a game system, jewelry, and Lopez's vehicle. (4 R.R. 209).

On December 22nd, Lopez's missing Tahoe was found partially submerged in a large body of water within a wooded area near Katy. (4 R.R. 156-57; 5 R.R. 41-44). The part of the vehicle that had not been submerged had been burned. (4 R.R. 156-57). Inside the vehicle, crime scene investigators with the Harris County Sheriff's Office recovered a cell phone, a shotgun shell, and a lighter. (4 R.R. 157).

Sergeant Craig Clopton spoke with people in the neighborhood and developed two potential suspects, Amber Thornton and Joseph Facundo. (4 R.R. 236). On December 28th, Clopton interviewed Thornton voluntarily at the homicide department. (4 R.R. 237). Based on information he received from Thornton, Clopton also developed appellant as a suspect. (4 R.R. 237). Clopton produced photo arrays containing pictures of the three suspects and showed them to Caden. (4 R.R. 239). Caden identified Thornton, Facundo, and appellant. (4 R.R. 241-43). Clopton then sought capital murder charges against appellant and a warrant was issued for his arrest. (4 R.R. 244, 246). On December 30th, appellant and Facundo were apprehended in Laredo, where they were attempting to cross the border into Mexico. (4 R.R. 248).

3

At appellant's trial, Thornton testified as a witness for the State. According to Thornton, Lopez was the neighborhood drug dealer. (5 R.R. 69). Thornton had previously been to Lopez's home and had purchased drugs from him. (5 R.R. 70-71). On the evening of December 20, 2011, Thornton went to the vacant house next door to her home to get high. (5 R.R. 83-85). She found that Facundo and appellant were already at the vacant house smoking marijuana. (5 R.R. 85). Thornton testified that they spent the next 20 to 30 minutes discussing a plan to rob Lopez to get money and drugs. (5 R.R. 86). They planned to enter Lopez's home under the pretense of selling him a laptop, which appellant had brought to the vacant house, in exchange for three bags of cocaine worth $20.00 each. (5 R.R. 87-88). Once inside, Facundo would hit Lopez over the head with a hammer, appellant would tie up the children, and they would steal Lopez's property and his Tahoe. (5 R.R. 88).

Facundo called Lopez and arranged for the sale of the laptop. (5 R.R. 92). Then they walked to Lopez's house and he let them inside. (5 R.R. 92). Facundo was carrying a hammer in his pocket. (5 R.R. 90). Thornton testified that Lopez was sitting at the dining room table feeding his infant daughter. (5 R.R. 93). Caden and Bailey were also present, but Lopez told them to go to the back room. (5 R.R. 94). Appellant set the laptop on the table and grabbed the cocaine. (5 R.R. 94). Then Facundo pulled the hammer out of his pocket and struck Lopez in the

4

back of the head. (5 R.R. 98). Lopez fell to the ground and Facundo continued to repeatedly strike him with the hammer. (5 R.R. 98).

Thornton testified that the baby began crying, so she picked her up from the highchair and held her while appellant went to Caden's room and tied up the other children. (5 R.R. 98-99). Facundo started grabbing televisions, guns, laptops, drugs, and money. (5 R.R. 100). Appellant and Facundo loaded the stolen items into the Tahoe while Thornton held the baby. (5 R.R. 102). Appellant and Facundo grabbed Lopez by the hands and dragged his body into the bedroom. (5 R.R. 103). Then Facundo retrieved an ornamental sword from Lopez's bedroom. (5 R.R. 104). Facundo and appellant were standing over Lopez's body, and Facundo was about to stab Lopez with the sword when he told Thornton to look the other way. (5 R.R. 104). Thornton testified that she did not watch what happened in the bedroom; instead, she walked over to the couch and set the baby down. (5 R.R. 105-06).

Then they drove the Tahoe to the vacant house and hid the stolen property in the attic. (5 R.R. 107). Facundo told Thornton that he and appellant discarded the Tahoe at a lake known locally as "The Cliffs." (5 R.R. 110). Thornton testified that she sold some of the jewelry she had stolen from Lopez's house. (5 R.R. 111). Thornton, Facundo, and appellant also took a safe stolen from Lopez's home to a neighborhood friend named David Tillman. (5 R.R. 111-12, 115, 181). Tillman

5

managed to open the safe, but they only found legal papers inside. (5 R.R. 114-15). Tillman later provided the stolen safe to Sergeant Clopton. (5 R.R. 813).

Christy Smejkal, a DNA analyst at the Harris County Institute of Forensic Sciences, testified that a swab of the sword scabbard found at the crime scene yielded DNA results that were consistent with a mixture of DNA from two or more individuals. (6 R.R. 41-42). Facundo and Thornton were excluded as possible contributors, but Lopez and appellant could not be excluded as possible contributors to the mixture. (6 R.R. 42). Smejkal testified that the statistical probability that the DNA was contributed by an unrelated, randomly selected individual was 1 in 3 Caucasians, 1 in 4 African Americans, and 1 in 3 Hispanics. (6 R.R. 46; 8 R.R. SX 77).

Dr. Roger Milton, Jr., the assistant medical examiner conducting the autopsy of the complainant, testified that Lopez sustained extensive blunt and sharp force injuries primarily to the head and neck region. (6 R.R. 62). There were at least 16 distinct, severe blunt-force injuries to Lopez's face and scalp. (6 R.R. 63). Dr. Milton testified that the left side of Lopez's face was essentially crushed. (6 R.R. 64). There was crushing of the upper jaw and some of Lopez's teeth had been knocked out. (6 R.R. 64). The lower jaw and left cheek bone also sustained extensive fractures. (6 R.R. 64). Dr. Milton testified that Lopez had inhaled and swallowed some of his teeth. (6 R.R. 64). The bony structures in the left side of

6

Lopez's neck were also extensively fractured, and there were six superficial cutting wounds overlying the blunt injury area. (6 R.R. 65-66). There were also several distinct patterns of circular injuries on Lopez's torso. (6 R.R. 66).

In addition, Lopez sustained 16 separate sharp force injuries to his head, neck, and chest. (6 R.R. 67). There was a chopping wound to the right side of Lopez's face which severely fractured the bony structures adjacent to the right side of his nose. (6 R.R. 68). There was also a chopping or blunt force injury to his left ear which perforated the ear and fractured the left side of his skull. (6 R.R. 69). The stab wounds to his neck measured approximately three inches in depth and penetrated some of the cartilaginous structures in the throat. (6 R.R. 67). The deepest stab wound punctured the jugular vein, causing extensive hemorrhaging. (6 R.R. 67). Lopez also sustained a perforating stab wound to the right upper chest that traveled through his lung and exited through his back. (6 R.R. 68). Dr. Milton testified that there was a high concentration of blood in the lungs, indicating that Lopez had inhaled large amounts of blood while in a supine position. (6 R.R. 102).

The complainant's son Caden testified that on the evening of December 20, 2011, he saw his father sitting at the kitchen table feeding his sister Julianne, and there were two men standing behind him. (6 R.R. 123-25). His father told him to go back to his room. (6 R.R. 125). Approximately 10 minutes later, a man entered his room carrying Julianne's baby clothes and said "We're going to play cops and

7

robbers." (6 R.R. 126). The man used the baby clothes to tie his legs together and to tie his hands behind his back. (6 R.R. 127). The man also tied up his cousin Bailey. (6 R.R. 126). Then the man said "If I hear a noise, I'm going to bring a dog in here." (6 R.R. 128). After the man left, Caden cracked the bedroom door open a few inches and saw the two men and a woman rummaging around in the kitchen. (6 R.R. 130-31). The woman was holding his sister Julianne. (6 R.R. 131). Caden also saw what he initially thought was red juice in the kitchen, but then realized it was blood. (6 R.R. 131-32).

Caden testified that he could hear the sounds of the table and the chairs being moved around. (6 R.R. 134). He also heard the sound of two voices speaking in his father's bedroom. (6 R.R. 134). He heard the sound of car keys jingling, and after about 10 minutes he looked out of the window and saw that the Tahoe was gone. (6 R.R. 135-36). Caden estimated that he waited approximately 30 minutes before his mother came home from work and found him. (6 R.R. 136). The following day, Caden was taken to the Children's Assessment Center to be interviewed. (6 R.R. 138). Sergeant Clopton showed him pictures and asked him to identify the people that were in his home that night. (6 R.R. 139). Caden circled appellant's photograph and identified him as the man that tied him up. (6 R.R. 140). Caden also made an in-court identification of appellant. (6 R.R. 140-41).

## REPLY TO APPELLANT'S FIRST AND SECOND POINTS OF ERROR

In two points of error appellant claims that the evidence is insufficient as a matter of law to support his conviction for capital murder as an individual or as a party under sections 7.02(a)(2) and 7.02(b) of the Texas Penal Code.

### I.    *Standard of review and applicable law.*

In assessing the legal sufficiency of evidence, a reviewing court considers the evidence in the light most favorable to the verdict, and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To make this determination, the reviewing court considers all the evidence admitted that will sustain the conviction, whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).  Circumstantial evidence is as probative as direct evidence in establishing culpability.  *Hooper*, 214 S.W.3d at 13; *Clayton*, 235 S.W.3d at 778.   The reviewing court should assess the "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the

prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

To establish that appellant was guilty of capital murder, as charged in the indictment, the State was required to show that he intentionally caused the complainant's death while in the course of committing robbery. (C.R. 8; TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2013). The sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Here, the charge of the court authorized appellant's conviction for capital murder individually or as a party to capital murder under section 7.02(a)(2) and (b) of the penal code. The jury's verdict must be upheld if the evidence is sufficient to sustain the conviction on any of the theories submitted. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Appellant asserts that the State failed to prove beyond a reasonable doubt that he intentionally caused the complainant's death. Appellant contends that the only reasonable conclusion supported by the evidence is that his co-defendant Joseph Facundo is culpable of the charged offense. Appellant reasons that Facundo

10

was observed at the crime scene with both a hammer and a sword; therefore, Facundo must have inflicted the complainant's injuries.[1]  *See* (Appellant's Brief pp. 27-28).  Even if the evidence is insufficient to support appellant's guilt individually, appellant is nevertheless criminally responsible as a party to the offense.

II.  *The evidence is sufficient to support appellant's conviction as a party to the offense.*

The law of parties provides that a person is criminally liable for an offense committed by the conduct of another person if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense."  TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2013).  When the evidence shows that the accused was physically present during the commission of the offense and encouraged or aided the crime's commission by words, agreement, or other affirmative and supportive conduct, the evidence is sufficient to sustain a conviction under the law of parties.  *See King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g).  In determining whether the

---

[1] According to Thornton's testimony and appellant's statements to the police, Facundo was the only person who struck the complainant with a hammer.  Thornton also testified that she saw appellant and Facundo standing over the complainant's body.  Facundo was holding a sword, but she did not actually see who stabbed the complainant.  (5 R.R. 104-06).  Moreover, appellant's DNA was found on the sword scabbard which suggests that appellant handled the sword.  (6 R.R. 42).

11

accused participated in the commission of the offense, the reviewing court may consider the events occurring before, during, and after the offense, and may rely upon any actions of the accused that reflect an understanding and common design to commit the offense. *Beier v. State*, 687 S.W.2d 2, 3-4 (Tex. Crim. App. 1985).

Appellant contends that the evidence is insufficient to support a conviction for capital murder as a party because the State failed to present any evidence establishing that appellant knew his co-defendants unlawfully intended to cause the complainant's death. *See* (Appellant's Brief pp. 28-29). Contrary to this assertion, the State introduced testimony from Thornton that she had formed a prior agreement with appellant and Joseph Facundo to rob *and* murder the complainant. (5 R.R. 145). Thornton testified that she met up with appellant and Facundo at a vacant house and spent roughly half an hour concocting a plan to gain entry to the complainant's home under the pretense of selling him a laptop. Once inside, Facundo would strike the complainant in the head with a hammer, appellant would tie up the children, and they would steal the complainant's property. (5 R.R. 88). Thornton also testified that they had a plan to sell the stolen property afterwards. (5 R.R. 111).

Appellant's intent to rob and murder the complainant is reflected in his actions assisting the commission of the offense. Thornton's testimony establishes that appellant contributed to the execution of their plan in several ways: (1) he

accompanied Thornton and Facundo to the complainant's house (5 R.R. 92); (2) he provided the laptop and sold it to the complainant for cocaine (5 R.R. 88, 97-98); (3) he tied up the children when Facundo began striking the complainant with the hammer (5 R.R. 99); (4) he helped Facundo drag the complainant's body into the bedroom (5 R.R. 103); (5) he loaded the complainant's property into the Tahoe (5 R.R. 102); (6) he helped transport the stolen property to the attic of a vacant house (5 R.R. 107-08); and (7) he and Thornton later retrieved a stolen safe from the attic and took it to David Tillman, who opened the safe (5 R.R. 112-15). Even if appellant did not personally inflict the injuries causing the complainant's death, his participation in the events occurring before, during, and after the commission of the offense clearly reflects a common understanding and design to murder and rob the complainant.

III.  *Appellant's guilt as a co-conspirator.*

Thornton's testimony also establishes appellant's guilt as a co-conspirator under section 7.02(b) of the Texas Penal Code. "If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy." TEX. PENAL CODE ANN. § 7.02(b) (West 2013).

13

Appellant summarily contends that the record contains no evidence (1) that he was part of a conspiracy to commit a felony offense or (2) that he should have anticipated the complainant's death would occur during the execution of the conspiracy. *See* (Appellant's Brief p. 29).

### i. *Evidence of a conspiracy.*

Contrary to appellant's assertion, Thornton's testimony reflects that appellant was involved in a conspiracy to commit the felony offense of robbery. A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2013). As discussed *supra*, Thornton testified that appellant agreed upon a plan to strike the complainant in the head with a hammer and steal his property.

In his statements to the police, appellant claimed that he only intended to sell the laptop to the complainant, and had not formed an agreement to rob or murder the complainant. (8 R.R. SX 59, 60). However, as the sole judge of the credibility of the witnesses, the jury was not required to believe appellant's self-serving statements. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Moreover, appellant's actions were consistent with Thornton's account of a planned robbery. There is no evidence that appellant attempted to leave the scene or contact the police when Facundo began striking the complainant with a hammer.

14

Instead, appellant immediately went to Caden's bedroom and bound the children's hands and feet together. Then he helped his co-defendant drag the complainant's body into the bedroom, rummaged through the complainant's house, stole from the deceased complainant, received an equal share of the profits, and attempted to flee to Mexico with Facundo. Thus, a rational trier of fact could have concluded beyond a reasonable doubt that appellant was a willing participant in a conspiracy to rob the complainant.

> ii. *Evidence that appellant should have anticipated the complainant's death.*

Furthermore, appellant should have anticipated that the complainant might be killed during the course of the robbery. The State presented testimony from Thornton that appellant was aware that Facundo intended to strike the complainant in the head with a hammer that he was carrying in his pocket. (5 R.R. 88-90). It is reasonably foreseeable that a person might die as a result of being struck in the head with a hammer. Furthermore, the fact that appellant continued to remain at the scene and did not protest when the complainant was repeatedly struck with a hammer and stabbed with a sword shows his acquiescence in the actions which caused the complainant's death. Viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found beyond a reasonable doubt that appellant was criminally responsible as a party to the capital murder.

15

IV.   *The accomplice-witness testimony is sufficiently corroborated by other evidence.*

Appellant further claims that the evidence is insufficient to corroborate the accomplice-witness testimony as required by Article 38.14.  *See* (Appellant's Brief pp. 29-30).  Article 38.14 provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."  TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2013).  To measure the sufficiency of non-accomplice evidence, the reviewing court disregards the accomplice-witness testimony and then examines the remaining portions of the record to see whether there is any evidence that tends to connect the accused with the commission of the crime.  *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007).  "The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense."  *Id.*  The mere presence of the accused in the company of the accomplice during the commission of the offense is alone insufficient to corroborate the accomplice-witness testimony; however, the presence of the accused combined with other suspicious circumstances may tend to connect the accused to the offense.  *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).  "Even apparently

16

insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Id*.

The record contains significant non-accomplice evidence connecting appellant to the commission of the offense. Notably, appellant was apprehended attempting to flee with Facundo to the border of Mexico. (4 R.R. 248). Appellant's flight raises an inference of guilt. *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994). Once in custody, appellant made several incriminating concessions to the police. Appellant admitted not only that he was present during the commission of the offense, but also that he participated by tying up the children. (8 R.R. SX 59, 60). In addition, appellant admitted that he stole knives and a television set from the complainant's house and hid the stolen property in a vacant house. *Id*. Appellant further confessed that he drove the complainant's car to "the Cliffs" and pushed the car into a body of water. *Id*. Appellant also told police that he stuffed his shirt in the gas tank and set the car on fire. *Id*. Appellant's admission was consistent with non-accomplice testimony that the complainant's vehicle was found partially submerged and the rear end of the vehicle had been burned. (5 R.R. 43-44, 46). Appellant also admitted that he received approximately $1,000 as his share of the profits. (8 R.R. SX 59, 60).

Moreover, Caden Lopez's testimony places appellant at the scene and further establishes that appellant bound his hands and feet together and threatened to bring a dog to his bedroom if he made any noise. (6 R.R. 127-28, 140-41).

In addition, the State presented testimony from David Tillman that appellant and Thornton came to his house with a safe they wanted his help in opening. (5 R.R. 179, 181). Tillman later provided the discarded safe to Sergeant Clopton. (4 R.R. 254). Marie Lopez confirmed that a safe had been stolen from her home. (4 R.R. 209).

Finally, a DNA mixture of two or more individuals was obtained from the scabbard of the sword used to stab the complainant. (6 R.R. 41-42). Facundo was excluded as a possible contributor to the mixture, but appellant could not be excluded. (6 R.R. 42). This non-accomplice evidence establishes appellant's presence during the commission of the offense and presents additional suspicious circumstances which, when combined, are sufficient to corroborate the accomplice-witness testimony. Appellant's first two points of error should be overruled.

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

In his third point of error, appellant claims that the trial court erred in admitting the 911 recording into evidence. The record reflects that appellant's trial counsel complained in a motion in limine that the 911 recording was irrelevant,

prejudicial and inflammatory. (2 R.R. 5; 4 R.R. 8). The trial court overruled the objection. (4 R.R. 8). Counsel renewed his objection when the 911 recording was subsequently offered and admitted into evidence at trial. (4 R.R. 44).

## I.    *Standard of review and applicable law.*

Evidence is relevant if it has any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. TEX. R. EVID. 403. In overruling a Rule 403 objection, it is assumed that the trial court conducted a balancing test and concluded that the evidence was not unfairly prejudicial. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.--Fort Worth 2008, pet. ref'd). Evidence is unfairly prejudicial if it has a "tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990).

An abuse of discretion standard is applied to a trial court's decision to admit or exclude evidence, as well as its determination as to whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does

not abuse its discretion unless its decision lies outside the zone of reasonable disagreement or the trial court acts without reference to any guiding rules and principles. *Id*.; *Montgomery*, 810 S.W.2d at 380.

II.   *The trial court did not abuse its discretion in admitting the 911 recording into evidence.*

The 911 recording in this case lasts approximately seven minutes and contains an emotional phone call from Shonte Mabe after she and Marie Lopez discovered the complainant's body. (8 R.R. SX 2). Mabe informed the 911 dispatch operator that she and Marie had come from work and found the complainant laying on the floor unconscious and covered in blood. Mabe told the operator that there was a towel covering his head. When the operator instructed Mabe to check the complainant's mouth for food or vomit before starting CPR, she began sobbing and vehemently protested that she could not perform CPR. Marie can also be heard in the background crying and screaming.

Appellant argues, without providing any significant analysis, that the recording lacks relevance, and that its probative value is substantially outweighed by the danger of unfair prejudice. *See* (Appellant's Brief p. 33). However, 911 recordings are generally deemed admissible to "provide a framework within which the particulars of the State's evidence could be developed" regardless of whether the recording "establish[es] any material fact not otherwise proven in the balance of the State's case." *Webb v. State*, 760 S.W.2d 263, 276 (Tex. Crim. App. 1988).

20

Here, the 911 recording provides relevant information regarding the layout of the crime, as well as the condition of the complainant's body. Although the recording is emotionally charged, similarly dramatic 911 recordings have been admitted to provide a framework for the State's case. *See Estrada v. State*, 313 S.W.3d 274, 300 (Tex. Crim. App. 2010) (holding that an emotional 911 call of family members screaming and crying uncontrollably upon discovering the victim's bloody body was not unfairly prejudicial because it provided a framework for the development of the State's evidence); *Yi v. State*, No. 01-05-01147-CR, 2007 WL 2052064, *4 (Tex. App.--Houston [1st Dist.] July 19, 2007, no pet.) (not designated for publication) (concluding that trial court did not abuse its discretion in admitting 911 tape of 11-year-old boy crying and praying as he discovered his mother's blood-soaked body because the tape offered a framework for the State's case). Appellant has not demonstrated that the trial court abused its discretion in admitting the recording into evidence.

## REPLY TO APPELLANT'S FOURTH POINT OF ERROR

In his fourth point of error, appellant summarily asserts that the trial court abused its discretion in admitting autopsy photographs into evidence. Appellant first contends that all 15 autopsy photographs are irrelevant because the cause of the complainant's death was not a contested issue at trial. Secondly, appellant

21

argues that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice.

The trial court's decision to admit photographs into evidence is reviewed for an abuse of discretion. *Penry v. State*, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995). A photograph is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. "The identity of the victim and the manner and means of death are certainly facts that are of consequence to the determination of the action." *Penry*, 903 S.W.2d at 751 (citing *Long v. State*, 823 S.W.2d 259, 271 n.18 (Tex. Crim. App. 1991)). Thus, autopsy photographs which are helpful in demonstrating the cause of death are admissible even if the cause of death is not contested. *See Flores v. State*, 299 S.W.3d 843, 858 (Tex. App.--El Paso 2009, pet. ref'd) (holding that photographic evidence was admissible even if it merely corroborated other evidence).

In this case, the indictment charged appellant with causing the death of the complainant by striking him with a hammer or stabbing him with a sword. (C.R. 8). The complainant sustained at least 16 blunt force injuries to the head, face and neck area, as well as 16 separate sharp force injuries. (6 R.R. 71). The 15 autopsy photographs introduced at trial were jointly selected by the prosecutor and the

22

medical examiner from more than 250 photographs taken of the complainant's injuries. (6 R.R. 70, 81).

The medical examiner testified that the autopsy photographs of the complainant's injuries were relevant to show the cause of death. State's Exhibit 79 is a photograph of the complainant's face showing multiple lacerations and blunt force injuries, as well as two distinctive, side-by-side puncture injuries to the cheek that resemble the shape of the claw on a clawfoot hammer. (6 R.R. 83-85; 8 R.R. SX 79). State's Exhibit 80 is a photograph depicting an overall view of the injuries to the complainant's face and torso. (6 R.R. 82-83; 8 R.R. SX 80). State's Exhibits 81 and 82 offer closer views of a semi-circular pattern of contusions on the complainant's torso which are consistent with blunt force trauma inflicted by the head of a hammer. (6 R.R. 73-74, 87-89; 8 R.R. SX 81-82). State's Exhibit 83 is a photograph of the left side of the complainant's neck showing the stab wound which penetrated the complainant's jugular vein. (6 R.R. 89; 8 R.R. SX 83).

The medical examiner further testified that State's Exhibits 84 and 84 show a fracture of the complainant's lower jaw, a semi-circular laceration to the upper corner of his mouth, and the removal of several teeth from his upper jaw. (6 R.R. 91-92; 8 R.R. SX 84-85). State's Exhibit 86 depicts the curvilinear pattern of two blunt force injuries to the complainant's scalp which fractured his skull. (6 R.R. 93-94; 8 R.R. SX 86). State's Exhibit 87 is a photograph of the circular pattern of

23

inbending fractures on the complainant's skull, which the medical examiner testified are consistent with blunt force injuries inflicted by a hammer. (6 R.R. 73-74, 94-95; 8 R.R. SX 87). State's Exhibit 88 reveals four additional lacerations to the back of the complainant's head forming the same semi-circular pattern. (6 R.R. 96-97; 8 R.R. SX 88). State's Exhibits 89 and 92 are photographs of the curvilinear pattern of the injuries to the complainant's left ear and cheek which suggest that he was struck with a narrow, angular object. (6 R.R. 98, 101; 8 R.R. SX 89, 92). State's Exhibits 90 and 91 are photographs depicting a perforating stab wound inflicted by a long cutting instrument which pierced the complainant's chest, traveled approximately nine inches through his body, fractured a rib, and exited through his back. (6 R.R. 98-100; 8 R.R. SX 90-91). Finally, State's Exhibit 93 is a photograph of the complainant's lungs showing that he inhaled copious amounts of blood while in a supine position. (6 R.R. 102-03; 8 R.R. SX 93). Thus, the photographic evidence of the complainant's injuries reinforced the State's theory that the complainant was struck in the back of the head with a hammer, that he fell to the ground, and was killed by repeated blows from a hammer and a sword.

Appellant further asserts that even if the photographs are relevant, they are overly prejudicial. Under the balancing test of Rule 403, the trial court must determine whether the probative value of the photographic evidence is

24

substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. In making this determination, the court assesses various factors such as whether the photographs are gruesome, their detail, their size, whether they are black and white or color photographs, whether the body is naked or clothed, and whether the body has been altered in some way that enhances the gruesomeness of the photograph. *Flores*, 299 S.W.3d at 858. Apellant offers no analysis explaining why the photographs posed a risk of unfair prejudice. Admittedly, the autopsy photographs are gruesome; however, that fact alone does not render them unduly prejudicial. *Id.* Moreover, the brutal nature of the offense necessarily results in gruesome autopsy photographs. Here, the trial court admitted only those photographs which were particularly probative of the manner and method of the complainant's death. Accordingly, appellant has not demonstrated that it was an abuse of discretion to admit the photographic evidence.

Furthermore, any error in the admission of the photographs must be disregarded unless it affected appellant's substantial rights. *See id.* at 859; TEX. R. APP. P. 44.2(b). The conviction must be affirmed if, after examining the record as a whole, the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Flores*, 299 S.W.3d at 859 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). In light of the substantial evidence of appellant's guilt, the admission of the autopsy photographs had, at most, only a

slight influence on the jury. As such, the admission of the photographs is harmless and appellant's fourth point of error should be overruled.

## REPLY TO APPELLANT'S FIFTH POINT OF ERROR

In his fifth point of error, appellant contends that the trial court erred by limiting his cross-examination of Sergeant Clopton which was designed to cast doubt upon the anticipated testimony of the State's principal witness, Amber Thornton. The prohibited line of cross-examination is as follows:

MR. ADAMO: As an experienced homicide investigator would you agree that taking capital murder off the table and offering aggravated robbery and possible probation could influence or be a motive to fabricate a story?

MR. WOOD: Objection. Speculation and relevance.

MR. ADAMO: I think he's qualified as an expert to testify as an experienced homicide investigator.

MR. WOOD: Speculation as to what motivation it might have to another person.

THE COURT: Sustained. (5 R.R. 11-12).

Appellant offers two theories challenging the trial court's ruling. First, appellant contends that the evidence was admissible under Rule of Evidence 702 because Sergeant Clopton was qualified to provide an expert opinion regarding Thornton's motive to fabricate her testimony. *See* (Appellant's Brief pp. 36-37). Appellant also briefly asserts that the limitation of cross-examination infringed upon his Sixth Amendment right of confrontation. *See id*. p. 37.

## I.  *Preservation of error.*

Appellant's claim that the trial court erred in excluding evidence has not been preserved for review.  To preserve error, the complaining party must generally make an offer of proof illustrating the substance of the proffered evidence.  *Watts v. State*, 371 S.W.3d 448, 463-64 (Tex. App.--Houston [14th Dist.] 2012, no pet.).  Rule 103(a)(2) provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked."  TEX. R. EVID. 103(a)(2).  An offer of proof may be made in question and answer form or in the form of a concise statement by counsel.  *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009).  "The purpose of the offer of proof is to show what the witness's testimony would have been—otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling."  *Bundy v. State*, 280 S.W.3d 425, 428-29 (Tex. App.--Fort Worth 2009, pet. ref'd) (citing *Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984)).

Appellant's counsel failed to make an offer of proof, and the record does not reflect how Sergeant Clopton would have testified.  *See Watts*, 371 S.W.3d at 464 (holding that error was not preserved where counsel failed to make an offer of proof and it was not apparent from the record how the witness would have

27

answered the prohibited line of inquiry). Thus, the substance of the excluded testimony cannot be determined and appellant's claim has not been preserved for review. Likewise, appellant has not preserved his Confrontation Clause argument because this theory of admissibility was never presented before the trial court. *See Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (holding that the defendant failed to preserve a Confrontation Clause argument because this basis for admission was not argued to the trial court in the defendant's proffer of the evidence).

## II. *Harm analysis.*

Moreover, the trial court's exclusion of evidence was harmless. The reviewing court must disregard any non-constitutional error which does not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Substantial rights are not affected by the erroneous exclusion of evidence if, after considering the record as a whole, the reviewing court "has fair assurance that the error did not influence the jury, or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Appellant alleges that the prohibited line of cross-examination was necessary to undermine Thornton's credibility. However, the State presented testimony from Thornton acknowledging that she had initially been charged with capital murder, which posed a potential penalty of death or life without the

possibility of parole. (5 R.R. 59-60). Thornton admitted that the original charge of capital murder was later reduced to a charge of aggravated robbery in exchange for her testimony against appellant and Facundo. (5 R.R. 62-63). On cross-examination, Thornton further testified that she had pled guilty to aggravated robbery, making her potentially eligible to receive probation after testifying against both co-defendants. (5 R.R. 128-29). Thus, the jury could have inferred that the reduced charge could affect Thornton's credibility, even without expert opinion testimony from Sergeant Clopton. Accordingly, appellant's fifth point of error should be overruled.

## REPLY TO APPELLANT'S SIXTH, SEVENTH, AND EIGHTH POINTS OF ERROR

In three points of error, appellant complains that the trial court erroneously excluded evidence of the questions Sergeant Clopton asked Amber Thornton during his initial interrogation of her on December 28, 2011. Appellant also argues that Thornton's statement should have been admitted under Rule of Evidence 801(e)(2)(E) as a statement by a co-conspirator during the course and in furtherance of the conspiracy, and under the Rule of Optional Completeness.

I. *Relevant background.*

Appellant's points of error concern the impeachment of Amber Thornton with a prior statement she gave to Sergeant Clopton. Thornton testified at trial that

she had formed a plan with appellant and Joseph Facundo to rob and murder the complainant. (5 R.R. 145). Thornton also testified that she had initially lied to Sergeant Clopton about their plan in an attempt to minimize her own culpability. (5 R.R. 118-19).

Prior to the introduction of Thornton's testimony, appellant's trial counsel attempted to cross-examine Sergeant Clopton regarding the questions he asked while interrogating Thornton. (4 R.R. 278). Counsel informed the trial court that he was essentially setting the stage to cross-examine Thornton later about her fabricated responses to Clopton's questions. (4 R.R. 278-79). The State objected that appellant was attempting to preemptively impeach Thornton through its cross-examination of Sergeant Clopton without providing Thornton an opportunity to admit or deny her prior inconsistent statement. (4 R.R. 278; 5 R.R. 18).

Trial counsel also offered into evidence a written translation of the audio recording of Thornton's statement, arguing that Rule 801(e)(2)(E)[2] provides a hearsay exception for statements of a co-conspirator in furtherance of the conspiracy. (5 R.R. 12-13, 15). Trial counsel argued that Thornton's original statement to the police in which she denied involvement in the crime was a "cover-up" in furtherance of the conspiracy. (5 R.R. 13). The State objected that

---

[2] Appellant actually cited to Rule 801(e)(1)(E) both at trial and on appeal. *See* (5 R.R. 13; Appellant's Brief p. 38). However, the Rules of Evidence do not contain a rule "801(e)(1)(E)." It is apparent from the context of appellant's argument that he is relying upon Rule 801(e)(2)(E).

Thornton's statement to Sergeant Clopton constituted inadmissible hearsay. (5 R.R. 13-15, 17). The State further objected that the witness appellant was attempting to impeach had not yet testified; therefore, Rule 801(e)(2)(E) was inapplicable until the alleged co-conspirator testified. (5 R.R. 17). The trial court sustained the State's objections. (5 R.R. 17-18). Appellant's trial counsel offered the audio recording and the written translation of Thornton's statement as a bill of exception. (5 R.R. 18; 8 R.R. DX 1, 2).

Thornton later testified on direct examination that she was not completely honest when she spoke with Sergeant Clopton because she was scared to admit her involvement. (5 R.R. 118). Thornton confessed that she had fabricated several details of her statement, such as denying the existence of a plan with her co-conspirators to rob the complainant. (5 R.R. 119). On cross-examination, Thornton again acknowledged that she had lied in her statement to Sergeant Clopton. (5 R.R. 133). Appellant offered Thornton's prior inconsistent statement into evidence, arguing that it was admissible under the Rule of Optional Completeness because the State brought up her statement on direct examination. (5 R.R. 138, 140). The trial court ruled that the statement would only be admitted if appellant's trial counsel followed the proper procedure for impeaching a witness's testimony. (5 R.R. 141-42).

*II.* *Appellant's sixth point of error presents nothing for appellate review.*

The entirety of appellant's argument for his sixth point of error is set forth in the following single-sentence heading: "The trial court erred when it refused to allow appellant to establish what questions Sergeant Clopton asked Amber Thornton during her interview with him on December 28, 2011 (R-IV-278,279)(R-V-18)." *See* (Appellant's Brief p. 37). Other than providing citations to the record for the trial court's alleged error, appellant provides absolutely no argument in support of this point of error and cites to no governing legal authority. Rule of Appellate Procedure 38.1(i) requires that the appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." The reviewing court is under no obligation to construct and compose appellant's arguments on his behalf. *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008). Accordingly, this point of error should be overruled as inadequately briefed.

*III.* *Amber Thornton's statement was not admissible as a statement of a co-conspirator under Rule 801(e)(2)(E).*

The trial court correctly precluded appellant from introducing Amber Thornton's inadmissible hearsay statement during cross-examination of Sergeant Clopton. An exemption from the hearsay rule is provided for statements made by a co-conspirator during the course and in furtherance of the conspiracy. TEX. R. EVID. 801(e)(2)(E). The rationale for this rule is based on the concept that "a

conspiracy is a common undertaking where the conspirators are all agents of each other and where the acts and statements of one can be attributed to all." *Byrd v. State*, 187 S.W.3d 436, 440 (Tex. Crim. App. 2005) (quoting *Bourjaily v. United States*, 483 U.S. 171, 188-94 (1987)). Consequently, the conspirators are imbued with a degree of trustworthiness in light of their lack of incentive to mischaracterize the actions of their co-conspirators. *Id*. Statements made by a conspirator after the conspiracy has come to a conclusion are not exempt from the hearsay rule. *Id*. (citing *Krulewitch v. United States*, 336 U.S. 440, 441-42 (1949)); *Deeb v. State*, 815 S.W.2d 692, 696 (Tex. Crim. App. 1991).

In the instant case, appellant contends that Thornton's statement was in furtherance of the conspiracy because she was attempting to prevent the police from learning of the existence of the conspiracy. *See* (Appellant's Brief p. 39). Appellant cites to *King v. State*, 189 S.W.3d 347 (Tex. App.--Fort Worth 2006, no pet.), in which statements made in an effort to conceal evidence that would incriminate the co-conspirators for murder was admissible because the statements benefitted the conspiracy. The instant case is distinguishable from *King* because Thornton's statements to Clopton did not benefit the conspiracy. To the contrary, Thornton statements implicated her fellow co-conspirators in the commission of the offense and minimized her own involvement in any plan to rob and murder the complainant. *See* (8 R.R. DX 1, 2). Thornton told Sergeant Clopton that appellant

33

and Facundo had previously discussed stealing from the complainant, but she was unaware that they were planning to rob the complainant on the date of the offense. *Id*. Thornton stated that Facundo hit the complainant with a hammer and appellant tied up the children. *Id*. Thornton also told Clopton that Facundo and appellant said they needed to kill the complainant because he knew them, that appellant paid her not to say anything, and that she was afraid of their retribution. *Id*. Thus, Thornton's statement did not serve any ongoing objective of the conspiracy.

Furthermore, appellant failed to lay the required predicate to impeach Thornton with her prior inconsistent statement. A witness may be impeached with a prior written or oral statement, but before extrinsic evidence of the statement may be introduced, the witness must first be told the contents of such statement and the time and place and the person to whom it was made, and the witness must be afforded an opportunity to explain or deny the statement. *See* Tex. R. Evid. 613(a).[3] "If the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted." *Id*. If the proponent of the evidence fails to lay the proper predicate, the prior inconsistent statement should not be admitted. *Harris v. State*, 152 S.W.3d 786, 795 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd). The purpose of Rule 613(a)'s foundation requirement is to

---

[3] An exception to Rule 613(a)'s foundation requirement exists for admissions of a party-opponent as defined in Rule 801(e)(2); however, as discussed *supra*, appellant failed to established that Thornton's statement was admissible as a statement of a co-conspirator.

34

put the witness on notice that the statement will later be used against her. *Allen v. State*, 788 S.W.2d 637, 640 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd).

Here, appellant clearly failed to lay the proper predicate. By offering the prior inconsistent statement into evidence before Thornton testified, appellant was improperly attempting to discredit Thornton's credibility without giving her an opportunity to explain or deny the statement. As such, the trial court did not err in excluding evidence of the statement and appellant's seventh point of error should be overruled.

## IV. *Amber Thornton's statement was not admissible under the Rule of Optional Completeness.*

When Thornton subsequently testified, she candidly admitted on both direct and cross-examination that she been dishonest when she initially told Sergeant Clopton that there was no plan to rob or murder the complainant. (5 R.R. 118-19, 133, 145). Considering that Thornton admitted to making the prior inconsistent statement, the statement was not admissible under Rule 613(a). Appellant re-offered the recorded statement into evidence, arguing that it was admissible under the Rule of Optional Completeness. (5 R.R. 138-40). The Rule of Optional Completeness provides that

> [w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in

35

evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

TEX. R. EVID. 107.

This rule is an exception to the hearsay rule and permits the introduction of otherwise inadmissible evidence when necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). The purpose of the rule "is to reduce the possibility of the jury's receiving a false impression from hearing only a part of some act, conversation, or writing." *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.--Houston [1st Dist.] 2006, no pet.). The rule is not implicated until a party attempts to have a portion of the recorded statement "given in evidence." *Sauceda v. State*, 129 S.W.3d 116, 122 (Tex. Crim. App. 2004) (quoting TEX. R. EVID. 107). The rule is not invoked by merely referring to or quoting from a statement. *Walters*, 247 S.W.3d at 218; *Goldberg v. State*, 95 S.W.3d 345, 387 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd).

Appellant contends, without providing any meaningful analysis, that Thornton's prior inconsistent statement should have been admitted under Rule 107 because it was necessary to fully and fairly explain the matter. *See* (Appellant's Brief p. 39). Appellant has not shown that the trial court abused its discretion in excluding the audio recording and written translation of Thornton's statement. *See*

36

*Sauceda*, 129 S.W.3d at 120 (holding that the trial court's ruling under the Rules of Evidence is reviewed for an abuse of discretion).

The record reflects that the prosecutor only asked Thornton general questions to establish that her prior statement was inconsistent with her testimony at trial:

> Q: So when you came down to the homicide office and spoke to Sergeant Clopton, do you remember the statement?
>
> A: Yes, sir.
>
> Q: And did you tell the full truth in that statement?
>
> A: No, sir.
>
> Q: Why not?
>
> A: Because I was scared of my involvement.
>
> . . . . . . . .
>
> Q: Were you honest with the police initially about your all's plan to rob Russell?
>
> A: No.
>
> Q: Why not?
>
> A: Because I didn't want them to know my involvement in it.
>
> Q: Were you honest with them about the vacant house?
>
> A: No.
>
> . . . . . . . .

37

Q:     Did you talk - - well, were you honest about you knowing David Tillman?

A:     No.  He never brought it up.

(5 R.R. 118-19).  The prosecutor did not seek to have a portion of the recorded statement introduced into evidence.  More importantly, the prosecutor's questions did not leave a false impression with the jury, and introduction of the entire statement was not necessary for the jury to fully understand that Thornton had previously lied to the police about her involvement in a plan to rob and murder the complainant.  Accordingly, the State did not open the door to admission of the recorded statement and appellant's eighth point of error should be overruled.

## REPLY TO APPELLANT'S NINTH POINT OF ERROR

Appellant argues that the trial court erred by refusing to permit cross-examination of Amber Thornton regarding a prior incident of lying to law enforcement.  Appellant contends that this testimony was admissible as evidence of habit under Texas Rule of Evidence 406.

I.     *Appellant's ninth point of error has not been preserved for review.*

At trial, the State raised a relevance objection when appellant's trial counsel asked Thornton whether she had lied to the police on other occasions.  (5 R.R. 159).  Trial counsel responded that "It shows her ability to lie to the police, Your Honor.  She's done it before, so her motive - - [.]"  *Id.*  The State further objected that trial counsel was attempting to improperly impeach the witness's credibility

38

with a specific instance of conduct. (5 R.R. 160). The trial court sustained the objection. *Id.* Appellant's trial counsel made an offer of proof, alleging that he would have questioned Thornton about a prior incident in which Thornton falsely told the police that she did not know anything about stolen property found in her home. (5 R.R. 192-93). Trial counsel never argued that the proffered evidence was admissible as evidence of habit under Rule 406.

To preserve a complaint for appellate review, the proponent of the excluded evidence must state the grounds for the ruling he seeks from the trial court with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. APP. P. 33.1(a); *Reyna v. State*, 168 S.W.3d 173, 176-77 (Tex. Crim. App. 2005) (recognizing that under the theory of party responsibility, the party complaining on appeal about the exclusion of evidence must have done everything necessary to bring to the judge's attention the evidentiary rule in question and its precise application to the evidence in question). The record reflects that appellant did not invoke Rule 406 as a ground for admissibility of the evidence. As such, appellant's claim has not been preserved for appellate review. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (holding that an argument is not preserved for review unless the trial court has an opportunity to rule on it).

*II.* *A single instance of a witness's prior conduct is not admissible as evidence of habit under Rule of Evidence 406.*

Moreover, appellant has not met his burden to show that the excluded evidence rose to the level of habit. Texas Rule of Evidence 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

TEX. R. EVID. 406. To introduce evidence of habit, the proponent "must at least demonstrate a regular practice of meeting a particular kind of situation with a specific kind of conduct." *Anderson v. State*, 15 S.W.3d 177, 183 (Tex. App.-- Texarkana 2000, no pet.). Here, appellant only alleged a single instance of a specific type of conduct. Accordingly, the excluded evidence was not admissible under Rule 406.

## REPLY TO APPELLANT'S TENTH POINT OF ERROR

In his tenth point of error, appellant argues that the trial court erred in denying a requested jury charge instruction on the defense of necessity.

*I.* *Standard of review and applicable law.*

In reviewing a jury charge issue, the appellate court must first determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If the charge is erroneous, the reviewing court must then conduct a harm analysis. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App.

40

2003).  If the error was preserved by a timely objection, reversal is required unless

the error is harmless.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App.

1984).

> A defendant's conduct is justified under the defensive theory of necessity if:
>
> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
>
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
>
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (West 2013).

A defendant is entitled to an instruction on any defensive issue raised by the

evidence, regardless of whether the evidence is weak, contradicted, or

unbelievable.  *Walters*, 247 S.W.3d at 209.  However, a defendant must overcome

two obstacles before he is entitled to a necessity instruction.  *Harrison v. State*, 421

S.W.3d 39, 41-42 (Tex. App.--Waco 2013, pet. ref'd).  First, the defendant must

satisfy the confession and avoidance doctrine by admitting to every element of the

offense, including the culpable mental state.  *Id*.; *Juarez v. State*, 308 S.W.3d 398,

399 (Tex. Crim. App. 2010).  The rationale for the necessity defense is that even

though the accused has committed an illegal act with the requisite culpable mental

41

state, his conduct is justified because he has avoided a harm of greater magnitude. *See Arnwine v. State*, 20 S.W.3d 155, 159 (Tex. App.--Texarkana 2000, no pet.).

Secondly, the defendant must establish that the evidence supports the defense of necessity. *Harrison*, 421 S.W.3d at 41-42. To rely on this defense, the defendant must establish that he *reasonably believed* that his conduct was immediately necessary to avoid imminent harm. *Arnwine*, 20 S.W.3d at 159. A "reasonable belief" is a belief "that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42) (West 2013). If there is a complete absence of evidence showing that the defendant's conduct was immediately necessary to avoid imminent harm, the defendant's belief may be deemed unreasonable as a matter of law. *Brazelton v. State*, 947 S.W.2d 644, 648-49 (Tex. App.--Fort Worth 1997, no pet.). A generalized fear of harm is not sufficient to raise the issue of imminent harm. *Id*. at 648.

II.    *The evidence does not raise the issue of necessity.*

Appellant contends that his statements to Sergeant Clopton are sufficient to warrant the submission of a necessity instruction. Appellant admitted that he tied up the children and helped steal the complainant's property, but claimed that he was forced to do so out of fear of his co-defendant, Joseph Facundo. (8 R.R. SX 59, 60). Appellant told Sergeant Clopton that if Facundo could brutally kill the

complainant with a hammer, Facundo was capable of inflicting the same violence on him. Even assuming that these statements constitute defensive evidence[4], they do not raise the defense of necessity. Appellant's assertion that his participation in the offense was coerced by a perceived threat of violence from his co-defendant invokes the defense of duress, rather than necessity. Section 8.05(a) of the Penal Code provides an affirmative defense for duress if "the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another." The defense of necessity is not raised by appellant's claim that his conduct was coerced:

> The justification of necessity, however, is not based on external pressure; the statute does not require coercive behavior by a third party. Rather, the language of the statute indicates that "necessity" turns on a personal choice made by the actor based on the relative desirability of acting or not acting . . . Necessity is raised if the choice to act is an internal decision, not coerced by another.

*Gilbert v. State*, No. PD-1645-08, 2010 WL 454966 *5 (Tex. Crim. App. Feb. 10, 2010) (not designated for publication) (concluding that the necessity defense was

---

[4] In *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007), the Court of Criminal Appeals indicated that a necessity instruction is only appropriate if the defendant's testimony, stipulation, or "defensive evidence" admits to every element of the offense. In this case, the only evidence relied on by appellant to support a necessity instruction are his recorded statements, which were offered by the State and introduced without objection. (5 R.R. 201, 208). It is unclear whether appellant's recorded statements constitute "defensive evidence." *Cf. Rodriguez v. State*, 368 S.W.3d 821, 825 (Tex. App.--Houston [14th Dist.] 2012, no pet.) (holding that defendant's recorded statement, introduced into evidence by the State over objection, did not constitute "defensive evidence" in support of the affirmative defense of duress).

not raised by evidence that a co-defendant threatened to kill the defendant if he did not assist in the commission of aggravated robbery).

Moreover, it is apparent from the record that appellant's trial counsel was relying on the defensive theory of duress at trial. During closing argument, counsel urged "So the fact that [appellant] tied up Caden when he was told to do so by a man holding a bloody hammer in his hand, that's ***duress***." (7 R.R. 18) (emphasis added). Trial counsel further asserted "And Facundo has got a bloody hammer in his hand and there's Russell Lopez lying at his feet. What would you do? That's called ***duress***. That's like I better go do that or else he's going to take the hammer to me." (7 R.R. 30-31) (emphasis added).

Counsel further argued that appellant did not have the requisite intent to murder the complainant while in the course of committing robbery. (7 R.R. 21). Accordingly, appellant failed to satisfy the threshold requirements of the avoidance and confession doctrine. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (holding that the defendant was not entitled to a jury instruction on necessity when he argued at trial that he did not perform the actions alleged by the State and lacked the requisite intent).

Moreover, appellant has not demonstrated that his conduct was immediately necessary to avoid imminent harm. There is no evidence that Facundo made an express or implied threat of imminent physical harm. *See Murkledove v. State*, 437

44

S.W.3d 17, 25 (Tex. App.--Fort Worth 2014, pet. dism'd) (holding that it was unreasonable for the defendant to believe that he would be harmed by his co-defendant if he did not assist in the commission of the offense when the co-defendant had not made any threats). At most, appellant's statements to Sergeant Clopton reflect that he harbored a generalized fear of harm. Furthermore, appellant told Clopton that he refused to comply with Facundo's demand to use the sword to "finish off" the complainant. (8 R.R. SX 59). Thus, appellant's own statement contradicts his claim that he believed he was in imminent harm. Accordingly, appellant was not entitled to a necessity instruction.

## REPLY TO APPELLANT'S ELEVENTH POINT OF ERROR

Appellant further contends that the trial court erred in denying a requested jury charge instruction on the lesser-included offense of Class A misdemeanor theft of property.

In determining whether an accused is entitled to a jury charge instruction on a lesser-included offense, a two-pronged test is applied. First, the reviewing court considers whether the lesser offense is a lesser-included offense under Article 37.09 of the Texas Code of Criminal Procedure. *Stadt v. State*, 182 S.W.3d 360, 363 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). Then the court examines whether there is some evidence that would permit the jury rationally to find that the defendant is guilty only of the lesser

45

offense.  *Id.*  A defendant is entitled to a requested instruction on a lesser-included offense if the request is supported by more than a scintilla of evidence.  *See Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011).  "The credibility of the evidence and whether it is controverted or conflicts with other evidence may not be considered in determining whether such a charge should be given."  *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985).

In this case, the charge of the court contains an instruction on the lesser-included offense of theft of property of the value of $1,500 or more but less than $20,000, a state jail felony.  *See* (C.R. 246-48); TEX. PENAL CODE ANN. 31.03(e)(4)(A) (West 2013).  Appellant requested an instruction on misdemeanor theft based upon his statements to Sergeant Clopton that he received $1,000.  *See* (7 R.R. 5; Appellant's Brief p. 45).[5]

Appellant's argument mischaracterizes the evidence.  The record reflects that appellant participated in the theft of televisions, a game system, a jewelry box, guns, laptops, drugs, money, and a vehicle (4 R.R. 209; 5 R.R. 100).  The only evidence of the value of the stolen property is appellant's statement to Sergeant Clopton, in which he admitted that he and his co-defendants stole approximately

---

[5] Theft of property is classified as a Class A misdemeanor if the value of the stolen property is $500 or more but less than $1,500.  TEX. PENAL CODE ANN. § 31.03(e)(3) (West 2013).

46

$3,000 or $4,000 from the complainant's home, and that his share of the proceeds was around $1,000.[6] (8 R.R. SX 59). *Id.*

A defendant is not entitled to an instruction on the lesser-included offense of theft unless the record clearly reflects the value of the stolen property. *See Ramirez v. State*, 422 S.W.3d 898, 901-02 (Tex. App.--Houston [14th Dist.] 2014, pet. ref'd) (holding that defendant was not entitled to a lesser-included instruction on theft based on mere speculation as to the stolen property's value). Here, the only evidence in the record concerning the value of the stolen property is appellant's estimation that it was worth between $3,000 and $4,000. Thus, there is no evidence supporting a jury determination that appellant was guilty only of the lesser offense of Class A misdemeanor theft of property.

## REPLY TO APPELLANT'S TWELFTH POINT OF ERROR

In his final point of error, appellant complains that the trial judge improperly commented on the weight of the evidence by including the following definition of "conspiracy" in the abstract portion of the jury charge:

> By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons with intent, that they, or one or more of them, engage in conduct that would constitute the offense. *An agreement constituting a conspiracy, if any, may be inferred from acts of the parties.*

---

[6] Presumably, appellant's estimation excludes the value of the complainant's stolen SUV, which was destroyed rather than sold.

47

(C.R. 240) (emphasis added). At trial, appellant summarily objected that the last sentence of the definition constituted a comment on the weight of the evidence. (7 R.R. 4). The trial court overruled the objection. (7 R.R. 5).

On appeal, appellant contends that the trial court improperly commented on the weight of the evidence by failing to instruct the jury in accordance with section 15.02(a)(2). *See* (Appellant's Brief. P. 46). Section 15.02 gives the following definition for criminal conspiracy, in relevant part:

(a) A person commits criminal conspiracy if, with intent that a felony be committed:

1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and

2) he or one or more of them performs an overt act in pursuance of the agreement.

(b) An agreement constituting a conspiracy may be inferred from acts of the parties.

TEX. PENAL CODE ANN. § 15.02(a),(b) (West 2013).

Appellant's complaint has not been preserved for appellate review because it fails to comport with his objection at trial. *See* TEX. R. APP. P. 33.1(a) (the record must show that the grounds for the ruling sought were stated with sufficient specificity to make the trial court aware of the complaint). Furthermore, appellant provides only cursory analysis and inapplicable legal authority in support of this

argument. As such, appellant's twelfth point of error should be overruled as unpreserved and inadequately briefed.

## CONCLUSION AND PRAYER

It is respectfully submitted that all things are regular and the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas


/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991
hudson_heather@dao.hctx.net
curry_alan@dao.hctx.net


## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 11,628 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600

Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been

submitted for service by e-filing to the following address:

Wayne T. Hill
4615 Southwest Freeway, Suite 600
Houston, Texas 77027
Tel: (713) 623-8312
Fax: (713) 626-0182
wthlaw@aol.com


/s/ Heather A. Hudson
**HEATHER A. HUDSON**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24058991

Date: 5/12/2015